## STATE EX REL. v. CARTER, Auditor
(No. 1254, June 10th, 1924; 226 Pac. 690.)

STATES—STATUTES—APPROPRIATIONS—MILITIA—U. S. MILITARY SERVICE—WORDS AND PHRASES.

1. A statute merely creating an obligation—a promise or duty to pay a claim against the State—is not an appropriation of state funds for the payment of the claim, and will not authorize state officials to draw a warrant for that purpose.

2. An appropriation for the payment of a continuing or recurring obligation must embody a direction sufficient to authorize officers of the state to draw and pay warrants therefor without any further obligation, it being assumed in absence of such direction that it was intended that each Legislature should make an appropriation sufficient to meet the obligation.

3. Comp. St. 1920, §§ 386, 387, specifying salaries of officers and enlisted men of National Guard during encampments held under section 374, *held* not a continuing appropriation, within Const. art. 3, §§ 34, 35, and article 16, § 7; it being contemplated that each Legislature should make an appropriation sufficient to meet the obligation.

4. Appropriation by Laws 1923, c. 108, of a certain amount to pay members of the National Guard in federal service does not cover compensation of officers and enlisted men during encampment held under Comp. St. 1920, § 374, since the National Guard during such encampment is not in federal service.

5. Appropriation for militia contingent by general appropriation act (Laws 1923, c. 115, § 9), *held* available for payment of salaries of officers and enlisted men of the National Guard for services during encampment, under Const. art. 3, § 34, requiring general appropriation bills to embrace nothing but appropriations for ''ordinary expenses'' of legislative, executive, and judicial departments, interest on public debt, and for public schools.

Original proceedings in mandamus by the State of Wyoming on the relation of Walter F. Davis, Adjutant General of the State of Wyoming, against Vincent Carter, Auditor of the State of Wyoming. Heard on respondent's demurrer to the petition.

*David J. Howell,* Attorney General for respondent.

Provisions of Chapter 88, Section 41, Laws 1913 are similar to the present law; this Act was construed by the Attorney General on October 13th, 1914 as being in effect an appropriation available to make up deficiencies necessary to pay the per diem of militiamen; the phraseology of the Section was changed somewhat by Chapter 107, Section 35, Laws 1917, which now appears as Section 386, Comp. Stats. 1920; and which was given a contrary interpretation by the Attorney General in an opinion of August 25th, 1921; the Budget Law, since enacted, probably affects the question; it is apparent that the contingent fund of the Adjutant General is the only one available for the expenditures here involved, and that Section 386 C. S. 1920 is not an appropriation for the purpose.

*Thurman W. Arnold, R. S. Mentzer* and *Haggard & O'Mahoney* for relator.

Expenditures of this character have been heretofore made from a fund known as ''Militia Contingent Fund'' but relator contends that said fund was appropriated for other purposes, which if thus depleted will be insufficient to care for and house property of the United States now in the hands of the National Guard, or conduct the annual train-

ing required by the National Government; Sections 386-387
C. S. 1920 constitute an appropriation to pay the per diem
of enlisted men of the guard, serving in summer camps; it
is in the nature of a continuing appropriation and gov-
erned by the rule announced in State vs. Burdick, 4 Wyo.
272; the Burdick case is supported by the following authori-
ties: Can v. State, 127 Ind. 204, 26 N. E. 778; Campbell
v. Brown, 115 Ind. 594, 18 N. E. 303; State v. Eggers, 35
Nev. 250, 128 Pac. 186; State ex rel Davis v. Eggers, 29
Nev. 469, 91 Pac. 819; State v. Jorgenson, 25 N. Dak. 539,
142 N. W. 450, 49 L. R. A. (NS) 67; State v. Jorgenson, 31
N. Dak. 563, 154 N. W. 525; Section 386 was not repealed
by the Budget Act, 36 Cyc. 1073 and cases in note; the rule
was recognized in Holcomb v. Brown, 4 Wyo. 290; if Sec-
tion 386 does not create its own appropriation the money
cannot be taken from a general appropriation, Art. 3, Sec.
34; and the payments cannot be taken out of the militia
contingent fund which is a part of the general appropria-
tion act, Chap. 115, Sec. 9, Laws 1923; the passage of a
special appropriation of $300 for that purpose, further in-
dicates, that it was not intended to charge this expense to
the contingent fund; the Constitution requires the legisla-
ture to provide by law, for the maintenance and discipline
of the National Guard, Art. 17, Sec. 2; the requirements
are found in the National Defense Act; our position is sup-
ported by the Burdick case, and not affected by the Budget
Act; the contingent fund is a part of the general appro-
priation act; the pay of enlisted militiamen is not an or-
dinary expense of the co-ordinate departments of the state
government and cannot be paid from a general appropria-
tion account, of which the contingent fund is a part; the
insufficiency of the special appropriation cannot alter the
question.

KIMBALL, Justice.

Section 374 of Wyo. Comp. Stat. 1920 provides, among
other things, that the national guard of Wyoming shall par-

ticipate in encampments, maneuvers etc. at least 15 days in each year unless excused by the secretary of war.

Sections 386 and 387 provide that:

(Sec. 386)  ''For each twenty-four hours duty during encampments, maneuvers, or other exercises, each officer and enlisted man of the national guard of Wyoming shall receive, while so engaged in such duties, the same pay and subsistence, transportation and travel allowances, as officers and enlisted men of corresponding grade and rank of the regular army are, or may be, entitled to by law, and in addition thereto, each enlisted man shall receive one dollar per day. And for each day a troop of cavalry or battery of artillery or mounted detachment is actually in encampment, maneuver, or other exercises, or enroute to or from the same, not exceeding in all thirty days, for each encampment, maneuver, or other exercises, there shall be allowed not to exceed one dollar and fifty cents per day for each horse actually and necessarily used, not to exceed one horse for each officer and enlisted man: provided, that all vouchers for transportation, subsistence, medical attendance (when not rendered by a medical officer of the service), supplies and quarters, and for the use of horses for the troops, shall be forwarded to the adjutant general, if to be paid for from the state funds, and to the United States disbursing officer if to be paid for from federal funds. When audited by the adjutant general and approved by the governor, the said vouchers shall be paid from the fund appropriated for that purpose; provided further, that if any payment for such encampment, maneuver, or other exercises, or allowances for horses, authorized to be paid for from federal funds, no payment shall be made from state funds except the one dollar per day additional pay for enlisted men.''

(Sec. 387)  ''Payments made from state funds under the preceding section, shall be made by the adjutant general. No vouchers for any such payments shall be audited unless

certified as correct by the proper commanding officer and audited and approved as provided for in the preceding section; pay rolls of companies, troops and batteries, and also the field and staff officers, non-commissioned officers of the staff, and bands of regiments, shall be furnished and certified to by commanding officers of such organizations. Payments made from federal funds shall be governed by rules and regulations prescribed by the war department.''

The state constitution contains the following provisions: Art. III, Sec. 35:

''Except for interest on public debt, money shall be paid out of the treasury only on appropriations made by the legislature, and in no case otherwise than upon warrant drawn by the proper officer in pursuance of law.''

Art. XVI, Sec. 7:

''No money shall be paid out of the state treasury except upon appropriation by law and on warrant drawn by the proper officer,   *   *   *.''

Art. III, Sec. 34:

''The general appropriation bills shall embrace nothing but appropriations for the ordinary expenses of the legislative, executive and judicial departments of the state, interest on the public debt, and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject.''

Art. XVII, Sec. 2:  ''The legislature shall provide by law for the enrollment, equipment and discipline of the militia to conform as nearly as practicable to the regulations for the government of the armies of the United States.''

The general appropriation act of 1923, making appropriations for the two-year period ending March 31, 1925,

contains the following item: "Militia contingent, fifty thousand dollars." Laws 1923, C. 115, Sec. 9.

The same legislature, by a separate act, appropriated the sum of $300 "to pay members of the National Guard in Federal Service." Laws 1923, C. 108.

Pursuant to section 374, supra, the national guard, which is the enlisted and organized militia of the state, was called into encampment and maneuvers for a 15-day period during the month of July, 1923, and the state paid to each enlisted man $1 per day for that period in accordance with the provisions of sections 386 and 387, supra, on vouchers audited by the adjutant general and approved by the governor. The state auditor in authorizing the payment of said vouchers, ordered them to be paid, and they were paid, from the appropriation of $50,000 for "Militia Contingent," as made by section 9, supra, of chapter 115 of the laws of 1923, the auditor claiming that that appropriation, and no other, was available for that purpose.

The adjutant general, as relator, seeks by mandamus to compel the state auidtor, as respondent, to credit back to the "Militia Contingent" appropriation the amount so paid from, and charged against, that appropriation. The case has been heard on respondent's demurrer to the petition.

The relator contends that sections 386 and 387, supra, make a continuing appropriation of the general funds of the state to pay the amount in question, and that the said payments should be charged against the general fund so appropriated for that purpose, and not against the appropriation for the militia contingent. In support of the contention that sections 386 and 387 make a continuing appropriation the relator relies on State v. Burdick, 4 Wyo. 272, 33 Pac. 125, 24 L. R. A. 266. In that case it was held that an act of the legislature which provided that "the state examiner shall receive an annual salary of $2000, * * * which shall be paid by the treasurer of the state in the same manner as other salaries * * * of state officers are

paid," constituted a continuing appropriation of an amount sufficient to pay said salary. The court noticed the constitutional requirement that the legislature shall provide by law for the appointment of a state examiner whose compensaiton, as fixed by law, cannot be increased or diminished during the term for which he is appointed, and the decision, in so far as it may be thought to have been influenced by the constitutional provisions prohibiting the diminishing of salaries, would not be in point in the case at bar. However, it was not held in State v. Burdick that the constitution itself made an appropriation or dispensed with the necessity of an appropriation to pay the salary of the state examiner, but that the statute in question was an appropriation for the payment of the salary within the meaning of section 35 of article 3 and section 7 of article 16 of the constitution. The court said that the constitutional requirement that no money shall be paid from the treasury except on appropriations made by the legislature or by law, means that no money shall be paid out of the treasury except in pursuance of law; that an act of the legislature directing the state treasurer to pay the amount of an annual salary of a public officer may be held to be an appropriation of a sufficient amount of money to make the required payments, and that such an appropriation is continuing and perpetual so long as the statute is unrepealed. The appropriation was said to be implied from the direction to the treasurer to pay.

No doubt these principles need not be confined in their operation to cases of salaries. In deciding whether there has been an appropriation by statute, either for the payment of a salary or for some other purpose, we must seek to discover the legislative intention as expressed in the law. In the case of salaries which could not lawfully be diminished, the court would hesitate to attribute to the legislature an intention to refuse an appropriation, and the conclusion that an appropriation was intended might, therefore, be reached more readily in salary cases than in some

others. The salary directed to be paid by the act considered
in State v. Burdick was a fixed and definite annual amount.
In the case at bar, the payments to be made to enlisted men,
while definite as to the amount for each man per day, is not
definite as to the number of men, nor as to the term of the
service, but depends for those matters on the rules and or-
ders of the Department of War. It might be urged that
the decision in State v. Burdick is not authority for hold-
ing that an appropriation can be implied from a direction
to pay claims of the kind here involved; and that, to con-
stitute an appropriation in a case like this, the maximum
amount to be paid must be fixed by the law. We do not
think it necessary to our decision in this case, to pass upon
the question thus suggested, but deem it sufficient for pres-
ent purposes to say that an intention to make an appro-
priation would be more readily implied in a case where the
claims to be paid were fixed and definite than in a case
where the amount to be drawn from the treasury could not
be foretold.

So far as we are advised, the authorities are unanimous
in holding that a statute merely creating an obligation—a
promise or duty to pay a claim against the state—is not an
appropriation of state funds for the payment of the claim,
and will not authorize the state officials to draw a warrant
for that purpose. Restine v. State, 20 Ind. 328; State v.
Moore, 50 Nebr. 88, 69 N. W. 373, 61 Am. St. Rep. 538.
While it was settled by State v. Burdick that the legislature
had the power under the constitution to pass a law that
would operate as a continuing appropriation until it is re-
pealed, it was made clear by that case, and must have been
since understood by the legislature, that such an appro-
priation for the payment of a continuing or recurring ob-
ligation must embody a direction sufficient to authorize the
officers of the state to draw and pay the warrants therefor
without any further appropriation. In the absence of such
a direction in the law, it must be assumed to have been in-
tended that each legislature should make an appropriation

sufficient to meet the obligation, and if the contemplated or promised appropriations are not made, it is not within the power of the courts to order the obligation discharged from funds that have not been appropriated. State v. Carr, 127 Ind. 204, 26 N. E. 778, 11 L. R. A. 370, 22 Am. St. Rep. 624.

Sections 374, 386 and 387, supra, were enacted by the legislature of 1917. Laws 1917, C. 107, §§ 23, 35-36. Under the principles that we have stated, the declaration in section 386 that enlisted men "shall receive one dollar per day," and that, with that exception, under the stated conditions, no other payment should be made from state funds, does not, in our opinion, make an appropriation. By the general appropriation act passed by the same legislature (Laws 1917, C. 125, § 12) an appropriation was made to meet the claims that would arise under section 386 during the years 1917 and 1918, and we believe it was intended that similar claims during future years should be paid from appropriations by succeeding legislatures. Aside from the authority to draw and pay warrants pursuant to the appropriation made by the general appropriation act, the laws of 1917 contained no direction to the proper officers for the payment of claims to arise under section 386. It is provided in section 387 that payments to be made from state funds under section 386 shall be made by the adjutant general. But state funds are in the custody of the state treasurer and are disbursed only on warrants drawn by the state auditor. The adjutant general himself can receive no funds from the state treasury except on appropriation by the legislature and on warrant drawn on the treasurer by the auditor. A direction to the adjutant general to make the payments could only mean that he do so from funds received by him in the foregoing manner from the state treasurer, and shows no legislative intention from which an appropriation could be implied.

In view of our opinion that sections 386 and 387 did not make a continuing appropriation for the payment of the

amount now in question, it is unnecessary to decide wheth-
er the budget law (Wyo. C. S. 1920, §§ 333-343), passed in
1919, or any other law enacted since the decision of State
v. Burdick, would require a more limited construction of
statutes relied upon as constituting continuing appropria-
tions.

There being no continuing appropriation for the pay-
ments in question, it remains to be decided whether it was
proper to make the payments out of the amount appro-
priated by the general appropriation law of 1923 for the
militia contingent.

It is contended that, if there was no continuing appro-
priation for the payments, the only appropriation made for
that purpose by the legislature of 1923 was made by chap-
ter 108, supra, of the laws of that year, appropriating $300
to pay members of the national guard in the federal ser-
vice. It is argued that the national guard, while in en-
campment or maneuvers, are in the federal service, and
that this appropriation of $300, though inadequate for the
purpose, must be accepted as the only appropriation out
of which the payments in question could lawfully be made.
Of this argument we need consider only the premise, that
the national guard, while in encampment or maneuvers,
are in the federal service. This may be true in a sense, but
we believe that a distinction may justly be drawn between
service when assembled for purposes of training and when
called to active duty in the actual service of the United
States, and that the national guard of the state, when in en-
campment and maneuvers as contemplated by sections 374
and 386, supra, are not in the federal service within the
meaning of chapter 108 of the laws of 1923, and, therefore,
that the appropriation made by the last mentioned law
was not intended to be used in making payments provided
for in section 386.

It is further contended that the appropriation for the
militia contingent, as made by the general appropriation
law of 1923, was not available for making the payments in

question, because the claims paid were not for the "ordinary expenses" of the legislative, executive or judicial departments, within the meaning of section 34 of article 3, supra, of the constitution, and not, therefore, of the class of claims that could lawfully be paid from an appropriation embraced in the general appropriation bill. This contention cannot be sustained. Although, as held, sections 386 and 387, supra, do not operate as a continuing appropriation of state funds for the payment of enlisted men of the national guard for services during encampments or maneuvers, there can be no doubt that those statutes created an obligation on the part of the state to make the payments. The legislature had the unquestioned right to create the obligation for the purpose of carrying out in part the requirement of section 2 of article 17, supra, of the constitution. The obligation continues so long as the law creating it is unrepealed, and its discharge may rightly be considered an "ordinary expense" of the executive department of the state.

It is alleged in the petition that, if the payments in question continue as a charge against the militia contingent appropriation, that appropriation will be so depleted that the state will be unable to meet other national guard expenses which must, if paid at all, be paid out of the same appropriation. It is further alleged that these other expenses, which the state will be unable to pay, are essential to the maintenance of the national guard in conformity with the national defense act, while the payments to enlisted men are not. Upon these grounds it is contended that the militia contingent appropriation cannot be used to make payments to enlisted men under section 386, but must be conserved for the payment of more important claims. If that was the intention of the legislature, the intention is not expressed in the law. Unless we are wrong in what we have already said, the state is obligated by law to pay enlisted men pursuant to section 386, and the discharge of this obligation is an ordinary and anticipated expense incident to the train-

ing of the national guard. Its importance as compared with other expenses of the national guard is a legislative, not a judicial, question. We assume that, pursuant to the budget law, the legislature of 1923 had before it estimates of all expenses of the national guard for the next bi-ennial period, and that such estimates included the amounts that would become due to enlisted men for services during encampments, as well as the other expenses now claimed to be of greater importance. In making its appropriations the legislature chose to set aside $50,000 for ''Militia Contingent,'' which we believe was meant to cover all national guard expenses that could not properly be paid out of some other appropriation. No one has been able to find any other appropriataion out of which to make the payments in question, and we think it was proper to make them out of the militia contingent appropriation. If the legislature was unwilling to appropriaate suffiicent funds to pay all the expenses of the national guard, and intended that some claims should be preferred, it would have been easy in some way to express that intention in the law. The officers charged with the administration of the law are justified in following the expressed will of the legislature, and should not be held to accountability for failure to observe its secret and unexpressed intentions.

We are of opinion, therefore, that under the facts alleged in the petition, the auditor made the payments from the appropriation made available by law for that purpose, and the demurrer will be sustained.

POTTER, Ch. J., and BLUME, J., concur.

NOTE—See Headnotes (1) 36 Cyc. p. 894; (2) 36 Cyc. p. 894; (3) 27 Cyc. p. 506; (4) 27 Cyc. p. 506 (1926 Anno).