[Civil No. 2380.   Filed June 17, 1926.]

[247 Pac. 126.]

JERRY H. B. CROAFF, Major First Battalion,
158th Infantry, National Guard of Arizona,
Appellant, v. CHARLES W. HARRIS, Ad-
jutant-General, State of Arizona, Appellee.

1. MILITIA—STATUTE HELD NOT TO AUTHORIZE ADDITIONAL COMPENSA-
TION BY STATE FOR SERVICES OF NATIONAL GUARD OFFICERS ATTEND-
ING MILITARY SERVICE SCHOOL, RIFLE MEET OR ENCAMPMENT UNDER
AUTHORITY FROM PRESIDENT AND SECRETARY OF WAR, BUT ONLY
FOR SERVICES IN OBEDIENCE TO GOVERNOR'S ORDERS TO PERFORM
LOCAL OR STATE DUTIES (U. S. COMP. STATS., §§ 3070B, 3072A,
3072B; U. S. COMP. STATS., AND U. S. COMP. STATS. ANN. SUPP.
1923, §§ 3044I, 3044P, 3068; CIV. CODE ARIZ. 1913, PAR. 3945, AS
AMENDED BY LAWS 1922, CHAP. 35, § 122, AND PARAGRAPHS 3950–
3952, 3955)—"ORDERS ON DUTY."—"Orders on duty" in Civil Code
of 1913, paragraph 3945, as amended by Laws of 1922, chapter 35,
section 122, providing for compensation, in addition to allowances
by United States army, to members of National Guard under
such orders, *held* not to cover services of guard officers attending
military service school, rifle meet or encampment under authority
from President and Secretary of War, as provided in United States
Compiled Statutes, sections 3070b, 3072a, 3072b, and United States
Compiled Statutes and United States Compiled Statutes, Annotated
Supplement of 1923, section 3068, but only services rendered in
obedience to Governor's orders to perform local or state duties,
under Civil Code of Arizona, paragraphs 3950–3952, 3955, especially
in view of United States Compiled Statutes and United States
Compiled Statutes, Annotated Supplement, of 1923, sections 3044i,
3044p, requiring National Guard oath binding member as soldier
of both state and nation.

2. MILITIA — NATIONAL GUARD IS PRIMARILY STATE ORGANIZATION,
THOUGH MEMBERS ARE SUBJECT TO REGULAR ARMY ORDERS, AND
ATTEND AND ARE ENTITLED TO SAME PAY AND ALLOWANCES, AS
REGULAR ARMY MEMBERS ATTENDING TRAINING SCHOOLS, ETC.,
WHEN CALLED ON BY PRESIDENT (U. S. COMP. STATS. ANN. SUPP.
1923, § 3068).—National Guard is primarily a state organiza-
tion, though members are subject to orders of regular army, attend
training schools, rifle meets and encampments as such, when called
on by President, and are entitled to same pay and allowances under
United States Compiled Statutes, Annotated Supplement, of 1923,
section 3068.

3. EVIDENCE—NATIONAL GUARD OFFICER WILL BE ASSUMED TO HAVE BEEN PAID BY UNITED STATES, AS REQUIRED BY LAW, FOR SERVICES WHILE ATTENDING MILITARY SCHOOL, RIFLE MEET AND ENCAMPMENT UNDER AUTHORITY FROM PRESIDENT AND SECRETARY OF WAR, ON APPEAL FROM JUDGMENT DISMISSING COMPLAINT IN MANDAMUS TO COMPEL PAYMENT BY STATE (U. S. COMP. STATS. ANN. SUPP. 1923, § 3068).—Supreme Court will assume, on appeal from judgment dismissing National Guard officer's complaint in *mandamus* to compel adjutant-general to pay him for services while attending military service school, rifle meet and encampment under authority from President and Secretary of War, that he was paid therefor by United States, as required by United States Compiled Statutes, Annotated Supplement, of 1923, section 3068.

4. MILITIA—STATUTE LIMITS USE OF STATE FUNDS FOR PAYMENT OF NATIONAL GUARDSMEN TO WHEN GUARD IS ORDERED ON DUTY FOR LOCAL OR STATE PURPOSES, AND PROHIBITS PAYMENT OF CLAIMS FOR SERVICES AT PRESIDENT'S INSTANCE, FOR WHICH CONGRESS HAS PROVIDED PAYMENT (U. S. COMP. STATS. ANN. SUPP. 1923, § 3068; MILITARY CODE ARIZ., PAR. 3954).—Military Code, paragraph 3954, directly limits use of state funds for payment of National Guardsmen to when Guard is ordered on duty for local or state purposes, and prohibits payment of claims for services performed at President's instance, for which Congress has provided payment under United States Compiled Statutes, Annotated Supplement, of 1923, section 3068, while attending training schools, rifle meets, or encampments.

5. STATUTES — COURT MUST ADOPT COMMON SENSE AND REASONABLE INTERPRETATION OF STATUTE ALSO SUSCEPTIBLE OF ABSURD INTERPRETATION.—Where language of statute is susceptible of two interpretations, one reasonable and the other unreasonable to extent of absurdity, it is court's duty to adopt interpretation conforming to common sense and reason.

---

See (1) 40 **C. J.**, p. 693, n. 98.    (2) 40 **C. J.**, p. 669, n. 43, p. 670, n. 47, p. 695, n. 29.    (3) 22 **C. J.**, p. 130, n. 30.    (4) 40 **C. J.**, p. 697, n. 40 New.    (5) 36 **Cyc.**, p. 1111, n. 71.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Judgment affirmed.

Mr. Herman Lewkowitz, Mr. Harold J. Janson, Mr. Wm. J. Galbraith and Mr. Thomas J. Croaff, for Appellant.

---

5.   See 25 **R. C. L.** 1019.

Mr. John W. Murphy, Attorney General, Mr. Earl Anderson and Mr. Frank J. Duffy, for Appellee.

Messrs. Armstrong, Lewis & Kramer, *Amicus Curiae.*

ROSS, J.—This is an appeal by Croaff, plaintiff below, from an order sustaining a general demurrer to his complaint and a judgment dismissing complaint.

On January 23, 1924, plaintiff presented to defendant Harris, adjutant-general of Arizona, three separate demands on account of services claimed to have been rendered by him in his capacity as major of the First Battalion, 158th Infantry, Arizona National Guard. The earliest claim is described and itemized as follows:

Claim Against the State of Arizona.
Phoenix, Arizona, January 21, 1924.
Jerry H. B. Croaff, Major, 1st Bn. 158th Infantry, Arizona National Guard, presents this claim on the Charles W. Harris, adjutant general, state of Arizona, for the sum of fourteen hundred, twenty-one dollars forty-three cents ($1,421.43) account of State pay for Camp Benning, Ga., officers' school, 1st Bn. 158th Infantry, as per items hereto annexed.

| | 1922 | 1923 | |
|---|---|---|---|
| Oct. 28 to February 4, inclusive, 98 days, captain's pay, base | | | $ 653 33 |
| Oct. 28 to February 4, inclusive, 98 days, longevity pay for over six years' service | | | 65 33 |
| Oct. 28 to February 4, inclusive, 98 days, commutation of quarters | | | 261 33 |
| Oct. 28 to February 4, inclusive, 98 days, rations | | | 117 60 |
| Oct. 28 to February 4, inclusive, 98 days, mileage | | | 323 84 |
| | | | $1,421 43 |

The next, in order of its date of service, is:

For the sum of two hundred thirty-two dollars, eighty-eight cents ($232.88) account of pay for state camp, Ariz. Nat. Guard, Ft. Huachuca as per items hereto annexed.

1923.

| | | |
|---|---:|---:|
| August 4–20, inclusive, 17 days, major's pay (base) ................... | 141 | 66 |
| August 4–20, inclusive, 17 days, longevity pay for over six years' commissioned service ............ | 14 | 16 |
| August 4–20, inclusive, commutation for quarters ................. | 56 | 66 |
| August 4–20, inclusive, rations ........... | 20 | 40 |
| | $232 | 88 |

The next, and the one of most recent date, is:

For the sum of four hundred twelve and 49/100 dollars ($412.49) account of pay for state rifle team, Camp Perry, Ohio, as per items hereto annexed.

1923.

| | | |
|---|---:|---:|
| Aug. 28 to October 3, inclusive, 37 days, major's pay (base) ............. | $308 | 33 |
| Aug. 28 to October 3, inclusive, 37 days, longevity pay for over six years' commission service ........... | 30 | 83 |
| Aug. 28 to October 3, inclusive, 37 days, commutation for quarters......... | 123 | 33 |
| | $462 | 49 |
| September 29, by cash ................... | 50 | 00 |
| | $412 | 49 |

The above demands, duly verified, were set out in the body of the complaint, which contained apt allegations of the respective offices occupied by plaintiff and defendant; the presentation of demands to defendant, and his refusal to audit or allow them, concluding with a prayer for a writ of *mandamus* to compel such audit. There is in the complaint, common to each of these demands, this allegation:

"That the said claim . . . on account of services . . . was performed while under orders on duty in accordance with a duly made and published order of the military department of the state of Arizona," with date and number of order.

The defendant's general demurrer to the complaint was sustained, and, the plaintiff having elected to stand on the complaint, judgment dismissing it was entered.

The plaintiff's assignment presents one question, whether or not the complaint states facts sufficient to constitute a cause of action in *mandamus.* The proper answer to this question in turn depends upon the meaning of paragraph 3945 of the Civil Code of 1913, as amended by section 122, chapter 35, Laws of 1922, reading as follows:

"While under orders on duty, each member of the National Guard of Arizona shall receive the following compensation, in addition to such allowances as may be made by the United States army:

"Commissioned officers shall receive the same pay and allowances as prescribed for their respective grades in the United States army.

"Following are the rates of pay per diem for enlisted men:

| | |
|---|---|
| Master sergeant | $3 50 |
| Technical sergeants, 1st sergeants, specialists 3rd and 4th class | 3 25 |
| Staff sergeants | 3 00 |
| Sergeants specialists 5th class | 2 75 |
| Corporals, specialists 6th class | 2 50 |
| Privates, 1st class | 2 25 |
| Privates | 2 00 |

"Provided, that after thirty days' continuous service the rates of pay shall be the same as for like grades in the regular army. Provided, that all salaries, compensation, pay and allowances shall be paid upon duly itemized and sworn claims, approved by the adjutant general, to the state auditor, who shall draw his warrants therefor on the state treasurer, who shall pay the same out of the general fund and

the appropriation for the National Guard of Arizona, authorized in the general appropriation bill."

This paragraph is a part of title 33, Civil Code, entitled "Military Code of Arizona."

If the phrase in the statute and the complaint, "orders on duty," was intended to cover services rendered by an officer of the National Guard while attending and receiving instruction at a military service school, or a rifle meet, or an encampment for routine practical instructions at or near an army post during a period of field training, or other outdoor exercises, under authority from the President of the United States and the Secretary of War, as provided in sections 3068, 3070b, 3072a and 3072b, United States Compiled Statutes of 1916, 1923, Annotated Supplement, then the complaint would probably state a cause of action. However, we cannot bring ourselves to believe that the legislature ever intended to give to such phrase such a broad and all-inclusive meaning. We think the legislature had in mind that the officers and members of the National Guard upon occasions might be called upon by the Governor of the state, as its commander in chief, to perform certain duties of a local or state character, as, for instance, to assist the civil authorities to suppress insurrections or rebellions, or to repel invasions, or to disperse mobs, or to enforce the laws of the United States and the state (paragraphs 3950, 3951, 3952 and 3955, Civil Code), and that, for services rendered in obedience to orders of that character, the officers and members should be compensated according to the provisions of paragraph 3945, *supra*. In other words, for services rendered to the state for its protection, under orders from the proper sources as named in the Military Code, the National Guard members and officers should be paid the same pay as officers and soldiers in the regular army.

This conclusion seems not only reasonable, but inevitable when we consider that the National Guard, in the National Defense Act (41 Stat. 459) and in the Military Code, is treated both as a local organization, having certain duties to discharge to the state, and as a part of the national army owing, upon call by the President, certain duties to the nation at large. Indeed, the oath of enlistment in the National Guard and in the National Guard Reserve binds the member as a soldier of both the state and the nation. Sections 3044i and 3044p, Comp. Stats., *supra.* In the latter capacity he must obey the orders of the President or Secretary of War, and in the former the orders of the Governor or adjutant-general of the state. We have not been directed to any provision of the Arizona Military Code empowering the Governor or the adjutant-general or any other member of the National Guard or the National Guard Reserve, to order officers or members of these organizations to attend a military service school, or a rifle meet, or an encampment for field training, or other outdoor exercises.

As was said in *State* v. *Johnson,* 186 Wis. 1, 202 N. W. 191:

"From the time of the framing of the Constitution, two distinct military organizations were expressly recognized; the one, the national army, created by Congress as the so-called standing army, which is in constant service, and which is available at all times for the suppression of rebellions and insurrections, and for national defense in times of war, the other, the militia, a state organization primarily in the service of the state, and subject to the call of the nation in the event of a national emergency. The national army consists of professional soldiers, who are in the continuous service of the government, while the members of the militia are taken from the rank and file of the people, all pursuing their respective avocations in life, but devoting a certain portion of their time to training, so as to enable them to perform effec-

tive service when called upon by the state in times of peace and by the national government in times of a national emergency.''

Thus, while primarily the National Guard is a state organization it and its members are subject to the orders and directions of the regular army, and, when called upon by the President to attend training schools, rifle meets, and encampments they do so, even though detailed by the Governor of the state, as members of the regular army and are entitled to and do receive from that unit ''the same pay and allowances, including allowances for quarters, subsistence, and travel to which an enlisted man of the regular army of like grade would be entitled for attending such school, college, or practical course of instruction under orders from proper military authority.'' Section 3068, *supra.*

While the complaint does not show that the plaintiff received such pay from the United States, we will assume that he was actually paid by the United States, the law requiring it, for the time and services for which he now demands that the state compensate him. Indeed, it was conceded in the argument that plaintiff had been paid by the federal government.

Paragraph 3954 of the Military Code of Arizona reads as follows:

''That when it becomes necessary to order the National Guard of Arizona, or any portion thereof, on duty, the necessary funds for pay, transportation of troops, material and subsistence, shall be paid out of any funds in the state treasury, not otherwise appropriated. Provided, however, that the state auditor shall draw no warrant therefor unless the requisition shall be accompanied by vouchers, approved by the adjutant general.''

We think this paragraph is a direct limitation upon the power of the state to use its funds only when the

National Guard is ordered on duty for local or state purposes and is, in effect, a prohibition against paying claims of the character of the ones here sued upon, or claims originating in a work or service done and performed at the instance of the President and for which the Congress has provided payment.

Legislatures not infrequently by inadvertence or neglect do some very absurd things. Where, however, the language employed is susceptible of two interpretations, one of which is reasonable and the other unreasonable to the extent of absurdity, it is the duty of the court to adopt that interpretation that conforms to common sense and reason.

We can illustrate what we mean by the facts in this case. Plaintiff attended, for 152 days according to his showing, a training school, a rifle meet and an encampment for outdoor training—all provided by the United States—and for such time received $2,066.80 out of the funds of the United States allotted to the National Guard and the National Guard Reserve of Arizona. He is now asking the state to duplicate that payment. In other words, he wants his pay and allowances for quarters and subsistence, although once paid by the United States, to be paid to him again by the state, so that his compensation for the 152 days would be $4,133.60.

Should the demands sued upon be allowed, the plaintiff would receive from the two governments $27 plus per day, or at the rate of nearly $10,000 per year. We admit the government should be generous to its citizens who leave their usual avocations to learn military tactics to fit them to defend it in times of distress and war, but we cannot bring ourselves to believe it was intended by our legislature to duplicate every dollar advanced by the United States for that purpose, or that it is a fifty-fifty proposition as in the national scheme of public road building.

If we should give the words "orders on duty" as found in paragraph 3945, *supra,* the construction here contended for, it would include the members of the Arizona National Guard and the officers thereof who were called upon by the President to defend this country in the World War. It seems to us that the meaning of such expression should be limited to orders issued by the commander in chief of the Arizona National Guard requiring duty of a local or state nature.

For the reasons above set forth, we are of the opinion that the court did not err in sustaining the demurrer and in dismissing the complaint.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.