[Civil No. 3405. Filed June 19, 1934.]

[33 Pac. (2d) 341.]

F. L. J. CARROLL, Petitioner, v. ANA FROH-MILLER, as Auditor of the State of Arizona, Respondent.

Mr. Frank J. Duffy, Staff Judge Advocate, Arizona National Guard, for Petitioner.

Mr. Arthur T. La Prade, Attorney General, and Mr. P. H. Brooks, Assistant Attorney General, for Respondent.

McALISTER, J.—On or about April 19, 1933, two citizens of Arizona, residing in Winslow, Navajo county, Carmel Giragi and Jack Irish, left that town in an airplane for Phoenix and did not reach their point of destination on schedule time. After several hours had passed without their arrival or the receipt of any word concerning them an alarm was sent out and the people along the route, a large part of which was over a rough, mountainous country, organized searching parties for the purpose of rescuing them. Many residents of the counties of Yavapai, Navajo and Coconino, including their officers, who had been in the search, joined in urgent requests to the Governor of the state for assistance, and after careful consideration of the matter he issued the following proclamation:

"Military Department
"State of Arizona
"Phoenix
"Special Orders                    April 19, 1933.
"No. 72.

"Extract

"1. Pursuant to the authority set forth in Section 2224, R. S., Ariz., 1928, as amended by chapter 60, Session Laws, Ariz., 1929, Captain Francis L. J. Carroll, Eq. Co., 158th Infantry, Commanding, 1st Lieut. Ernest A. La Salle, Co. F., 158th Infantry, 2d Lieut. John H. Hanny, Eq. Co., 158th Infantry, and twenty-six (26) enlisted men, Arizona National Guard, will proceed without delay to Pine, Arizona, for the purpose of assisting in the search being conducted by the sheriffs of Gila, Yavapai, Coconino and Navajo counties for Messrs. Giragi and Jack Irish, lost during an airplane flight from Winslow to Phoenix, Arizona, for a period of five (5) days, unless sooner relieved. Upon completion of the above duty the detachment will return to its proper station.

"In accordance with the provisions of section 2224, R. S. Ariz. 1928, as amended by chapter 60, Session

Laws, 1929, actual expenses will be allowed for subsistence, travel, quartering and incidental expenses, and the pay of officers and enlisted men will be at the rates set forth in section 2220, R. S. Ariz., 1928, as amended by chapter 60, Session Laws, 1929.

"The travel directed and the expenses incurred is necessary in the public service.

"By Order of the Governor

"OSCAR P. TEMPLE,

"Official [Seal]                The Adjutant General."

Pursuant to this order the petitioner, F. L. J. Carroll, Captain of Headquarters Company of the National Guard of Arizona, accompanied by Lieutenants La Salle and Hanny and twenty-six enlisted men, proceeded to Pine, Arizona, and there made diligent search both day and night until the bodies of Giragi and Irish were found. In performance of this duty he expended $19.68 in the use of his personal car, driving it 393½ miles and charging therefor five cents a mile. Upon the completion of this service he prepared a claim therefor and, after it was audited by the Adjutant-General of Arizona in the manner provided by law, presented it to the state auditor for audit and the issuance of a warrant in its payment. Some days later the auditor wrote the Adjutant-General returning the claim and stating that upon the advice of the Attorney General that it was not a legal charge against the state she had disallowed it. Thereupon Captain Carroll sought and obtained from this court an alternative writ directing her to audit the claim and issue her warrant in payment of it, or show cause for her refusal. She answered by interposing a general demurrer to the petition and the issue thus raised presents the question whether the order of the Governor directing the National Guard to aid in the search was a lawful exercise of the power conferred upon him by law.

The statute under which he acted, section 2224, Revised Code of 1928, as amended by chapter 60, section 10, Session Laws of 1929, reads as follows:

"Section 2224. *Payment of Transportation and Subsistence.* When the governor deems it necessary to order the national guard or any part thereof, on duty, the necessary funds for pay, transportation of troops, material and subsistence shall be paid out of any funds in the state treasury not otherwise appropriated; it shall be the duty of the state auditor, upon presentation of verified claims for the expenses provided for in this section, accompanied by vouchers approved by the adjutant general, to draw his warrant for the same and the state treasurer shall pay all such warrants out of the general fund."

Prior to amendment this section was in the following language:

"§ 2224. *Payment of Transportation and Subsistence.* When it becomes necessary to order the national guard on duty, the necessary funds for pay, transportation of troops, material and subsistence, shall be paid out of any funds in the state treasury, not otherwise appropriated; provided, however, that the state auditor shall draw no warrant therefor unless the requisition shall be accompanied by vouchers, approved by the adjutant general."

It will be observed that this section did not before amendment specifically provide who should judge as to the existence of the necessity for ordering the National Guard on duty but the change was couched in such language as to make this definitely and unmistakably a function of the Governor. Substituting for the term, "When it becomes necessary to order the national guard on duty," the expression, "*When the governor deems it necessary to order the national guard or any part thereof on duty,*" discloses clearly a legislative intent to place upon that officer and no one else the power to decide when it is necessary to do this. It can be done, therefor, only when *he*

deems it necessary, the opinion of other citizens of the state or any part thereof or of the officers of the various counties being wholly immaterial. ''The decision of the governor that the condition exists which demands the exercise of his authority is,'' to use the language of 40 C. J. 692, paragraph 70, ''conclusive and is not subject to review by the courts.''

This proposition is not questioned by the respondent but, she contends, the condition, disturbance or situation, which authorizes him to order the guard on duty, must be military in character, that is, come within the purpose of the legislation creating the National Guard, and, this being true, the action of the Governor in this case was without authority, since the duty the guard was called out to perform was not military in character and did not, therefore, come within the purview of the National Guard Act. In support of this contention the following statement by this court in *Croaff* v. *Harris,* 30 Ariz. 357, 247 Pac. 126, 128, is cited:

''We think the Legislature had in mind that the officers and members of the National Guard upon occasions might be called upon by the Governor of the state, as its commander in chief, to perform certain duties of a local or state character, as, for instance, to assist the civil authorities to suppress insurrections or rebellions, or to repel invasions, or to disperse mobs, or to enforce the laws of the United States and the state (paragraphs 3950, 3951, 3952 and 3955, Civil Code).''

The opinion in which this language is used was rendered before section 2224 was amended in such a way as to make it clear whose duty it is to determine when the necessity arose for calling out the National Guard, and while the conditions enumerated therein as justifying the Governor in taking this action are just as applicable under the law as amended, as they were under the old law, it does not follow that they are the only ones that authorize him

to take such action and the court did not intend to so hold. The fact that it pointed out these particular conditions does not mean that they are exclusive and that there are not others that would have the same effect. There is, for instance, no question of the Governor's power to order the guard to protect or aid in protecting life and property in an area that has been visited and greatly damaged by an earthquake, cyclone, flood, conflagration or other catastrophe, and yet none of these are mentioned in the opinion. Whether the condition or circumstances which prompted him to call the guard in this instance comes within any of these is not entirely clear, but whether it does or not it is at least plain that they are near the border line, and, this being true, the discretion the law has lodged in the chief executive of the state to determine when the National Guard shall be ordered on duty should not be interfered with, unless it is clear that he has acted arbitrarily and beyond his power, and we feel that such is not true in this instance.

When the emergency with which he was confronted in this case is kept in mind, namely that two of Arizona's citizens had been lost while enroute by airplane from Winslow to Phoenix, that the country over which they were flying was rough and mountainous, that it was unknown whether they had been killed or were merely injured and in great need of assistance, and that the people along the route, including the officers, seemed unable to cope with the situation and were begging him for help, it cannot be said that the Governor acted arbitrarily and in excess of his jurisdiction in ordering a part of the National Guard to aid in searching for and probably rescuing these two citizens. Had there been several planes and a number of men lost under the same circumstances no question would have arisen as to the legality of the Governor's act in ordering the guard

or a portion of it to aid in the search and probable rescue, and the principle, we think, is the same, even though only two persons were involved.

It is our view, therefore, that the expenses incurred by the petitioner in obeying the order of the Governor to aid in the search and probable rescue of Messrs. Giragi and Irish are a legal charge against the state, and that the warrant of the auditor in payment of it should issue.

ROSS, C. J., concurs.

LOCKWOOD, J., Dissenting.—As an individual I cannot help being glad that my colleagues have taken the view of the law which they have, for there is no doubt that, considering the matter from a moral standpoint alone, the Governor acted on the dictates of humanity in calling out the National Guard under the circumstances of this case, and, had the legislature been in session at the time, it would doubtless have made prompt provision for payment of the costs thereof.

As a judge, however, I must declare the law as I believe it exists, regardless of my personal opinion as to what it should be, and I regret to state that I cannot concur with the majority of the court, either as to their result or reasoning.

Section 2224, Revised Code of 1928, as amended in 1929, quoted in the majority opinion, is the authority under which the Governor attempted to act. This gives him, by its terms, a discretionary right in determining when the necessity arises requiring that the guard be called into service, and does not expressly limit the kind of service to be performed, but it seems to me that there is the implied limitation, which is assumed to go with every similar power, that the service must be one which the guard was created to perform, and not one which is sanctioned only by the moral law and which applies to

all alike. The National Guard is the organized militia of the state of Arizona, and the function of such a body has at all times and in all places been considered military only in its nature, and limited to the defense of the state against a public enemy, and to the preservation of internal order within its limits. Anything which reasonably subserves either of these two purposes is a function of the guard. Nothing else is. So far as this court has been advised, or has been able to ascertain, there is no case in the history of the United States where there has been an attempt to use the National Guard for any purpose, except on the avowed, although perhaps sometimes tenuous, theory that the preservation of public order by force was necessary.

Under the reasoning of the majority opinion, the Governor can use the guard for scavenger service, the mending of the public highways, or the construction of public buildings, if he thinks it necessary. Of course no one imagines he would actually do so, but according to that opinion the power exists.

I think that under the law the action of the auditor in refusing to issue her warrants for the expenses of the guard was correct, and that the proper course for petitioner, and those similarly situated, is a request to the legislature for an appropriation to pay the expenses of performing what was a moral, though not a legal duty, a request which I am sure the legislature would promptly comply with.