[Civil No. 4082.   Filed May 29, 1939.]

[90 Pac. (2d) 995.]

ELSIE ANDREWS, LOVELLA PATRICIA AN-
DREWS, JOANN ANDREWS, DELVIN AN-
DREWS, MAYNARD ANDREWS and LA-
HOMA ANDREWS (Applicants), Petitioners,
v. THE STATE OF ARIZONA, STATE AU-
DITOR, and ARIZONA NATIONAL GUARD
(Defendant Employer), and THE INDUSTRIAL
COMMISSION OF ARIZONA (Defendant In-
surance Carrier), Respondents.

476

Mr. Frank J. Duffy, for Petitioners.

Mr. Howard A. Twitty, for Respondents.

ROSS, C. J.—This appeal comes to us on *certiorari* to the Industrial Commission of the state and is prosecuted by the dependents of one Josiah Andrews from an award rejecting their claims for death benefits under the workmen's compensation law of this state. Section 1391 et seq., Rev. Code 1928.

Josiah Andrews was a member of Battery E, 158th Field Artillery, Arizona National Guard. At the time of his death he was with his unit of the Arizona National Guard, participating in field training, at Camp Bullis, Fort Sam Houston, Texas, such field training being provided for by the Secretary of War under an authorization dated May 25, 1938, in pursuance of the provisions of section 94, National Defense Act (June 3, 1916, chap. 134, 39 Stat. 206; sec. 63, Title 32, U. S. C. A.).

July 20, 1938, the Governor of Arizona, acting through and by his Adjutant General, issued a special

order under section 94, *supra,* and the authorization of the Secretary of War, that Battery E, 158th Field Artillery, Mesa, Arizona, should

"participate in field training with the Oklahoma National Guard at Camp Bullis, Texas, for the period August 6th to 22nd, 1938, inclusive, including travel time."

While at such encampment, and while in the line of his duty on August 11, 1938, Andrews fell from the rear end of a moving truck, was run over by a gun carriage and killed.

The application by the deceased's widow and minor children for death benefits was disallowed by the Industrial Commission on the ground that at the time of the accident causing his death Andrews was in the employment of the United States and not Arizona. The question is, does the Workmen's Compensation Law cover the case. The act of enlisting in the National Guard is of a contractual nature. Section 123, Title 32, U. S. C. A., provides that "Men enlisting in the National Guard of the several States . . . shall sign an enlistment contract and subscribe to" an oath of allegiance to the United States and the state of enlistment. It has been held that the act of enlistment in the army is a voluntary and not an involuntary act. *Rector* v. *Cherry Valley Timber Co.,* 115 Wash. 31, 196 Pac. 653, 13 A. L. R. 1247. It is a contract for services during the period of enlistment. Under the contract the state has employed the enlisted man. Section 1418, Revised Code of 1928, provides that the state as an employer shall be subject to the Workmen's Compensation Law, and section 1419, Id., provides that:

"The terms 'employee,' 'workman,' and 'operative,' as used herein, mean: Every person in the service of the state . . . under appointment or contract of hire, except the elective officials and except officials re-

ceiving more than twenty-four hundred dollars per year salary. . . . ''

■■ We think the services Andrews was rendering when he was killed clearly bring him within the Workmen's Compensation Law and that his surviving widow and minor children would be entitled to death benefits if the provisions of the Workmen's Compensation Law were the only applicable law. In that event, the fact that Andrews received his fatal injury in the state of Texas would make no difference. Section 1429, Id.

In *Croaff* v. *Harris,* 30 Ariz. 357, 362, 247 Pac. 126, 128, decided in June, 1925, Croaff was seeking to recover from the state regular pay for attending officers' training school at Camp Benning, Georgia, and for attending a rifle practice meet at Camp Perry, Ohio, claiming he was entitled to such pay, under paragraph 3945, Civil Code of 1913, as amended by section 122, chapter 35, Laws of 1922, in addition to allowances made by the United States Army. The material part of such section, as amended, reads:

''While *under orders on duty,* each member of the National Guard of Arizona shall receive the following compensation, in addition to such allowances as may be made by the United States Army:

''Commissioned officers shall receive the same pay and allowances as prescribed for their respective grades in the United States Army.

''Following are the rates of pay *per diem* for enlisted men:

| | |
|---|---|
| Master Sergeant | $3.50 |
| Technical Sergeants, 1st Sergeants, Specialists 3rd and 4th Class | 3.25 |
| Staff Sergeants | 3.00 |
| Sergeants, Specialists 5th Class | 2.75 |
| Corporals, Specialists 6th Class | 2.50 |
| Privates, 1st Class | 2.25 |
| Privates | 2.00.'' |

(Italics ours.)

In the Croaff case, in construing the phrase "under orders on duty," we said:

"We think the Legislature had in mind that the officers and members of the National Guard upon occasions might be called upon by the Governor of the state, as its commander in chief, to perform certain duties of a local or state character, as, for instance, to assist the civil authorities to suppress insurrections or rebellions, or to repel invasions, or to disperse mobs, or to enforce the laws of the United States and the state (paragraphs 3950, 3951, 3952 and 3955, Civil Code), and that, for services rendered in obedience to orders of that character, the officers and members should be compensated according to the provisions of paragraph 3945, *supra*. In other words, for services rendered to the state for its protection, under orders from the proper sources as named in the Military Code, the National Guard members and officers should be paid the same pay as officers and soldiers in the regular army."

In the revision of 1928, paragraph 3945, *supra,* was changed to read:

"§ 2220. *Pay of officers and men; company allowance.* While under orders *on local or state duty,* commissioned officers shall receive the same pay and allowances as prescribed for their respective grades in the United States army. Enlisted men shall receive the following pay per day. . . . " (Italics ours.)

Section 8, chapter 60, Laws of 1929, amended section 2220 to read:

"Pay Of Officers And Men; Company Allowance. While under *orders on state duty,* commissioned officers shall receive the same pay and allowance as prescribed for their respective grades in the United States army, allowing all time served in the Arizona national guard prior to June 3, 1916. Enlisted men shall receive the following pay per day: . . . corporals, specialists, sixth class, two dollars and fifty cents. . . . " (Italics ours.)

The legislature has, in exact and specific terms, limited the pay of officers and men of the National

Guard to services rendered on orders from the Governor of the state for state duty—duty of the kind named and described in the Croaff case.

Petitioners do not claim death benefits on the basis of the pay stipulated in amended section 2220, but they claim such benefits on the basis of a *per diem* payment of $1.20 to the deceased for six days, from August 6th to August 11th, the date of his death. When parties are entitled to compensation,. the statute provides that they

"shall receive the compensation herein fixed, on the basis of average monthly wage at the time of injury." Section 1438, Id.

Because the field training the deceased was attending was not a state duty, the compensation could not be based on the wage of $2.50 per day provided for in amended section 2220, and this is recognized by claimants.

The Thirteenth Legislature, in the general appropriation bill, chapter 73, Laws of 1937, in section 1, subdivision 33, appropriated for "Pay of enlisted men, field training, $19,000" for 1937, and $19,000 for 1938. The Adjutant General of Arizona presented to the state auditor the pay roll of Battery E, 158th Field Artillery, for its annual encampment for field training at Camp Bullis, from August 6th to August 22d, 1938, and in such pay roll fixed corporal Andrews' pay at $1.20 per day for six days, and the auditor paid it. Other members of his rank were paid the same *per diem,* and privates were paid $1 per day. These payments were all made out of the appropriation of $19,000 for 1938.

■■ The state legislature could have authorized by proper legislation the payment to enlisted men of a *per diem* for time spent in field training outside the state, had it wanted to do so. When Battery E at-

tended the encampment at Camp Bullis, Texas, there was no state law providing that the members thereof should be paid during such attendance. The mere appropriation in the general appropriation bill of a sum of money for "Pay of enlisted men, field training," is not an authorization that they be paid a *per diem* while out of the state for field training. Section 2220, *supra*, could not be thus amended in the appropriation bill. *Carr* v. *Frohmiller*, 47 Ariz. 430, 56 Pac. (2d) 644; *Sellers* v. *Frohmiller*, 42 Ariz. 239, 24 Pac. (2d) 666. Thus the claim for pay while attending field training at Camp Bullis, Texas, was not only not legal but was contrary to the law, and such wage could not form a lawful basis for computing death benefits under the statute.

The authorization by the Secretary of War for the training and encampment at Camp Bullis provided that the expenses of such encampment would be paid out of the "amounts provided by the National Guard Bureau Reservation of Funds issued pursuant to this Training Authority," and the Special Order issued by the Governor contained these provisions:

"Subsistence while in Concentration area, gasoline and oil for training, and miscellaneous supplies and expenses at Camp Bullis will be supplied by the 8th Corps Area General Depot.

"*Pay and allowances,* travel rations, oil and grease, for movement to and from Camp Bullis, Texas, and emergency repairs to motor vehicles en route will be paid by the United States Property and Disbursing Officer for Arizona, and are chargeable to the following authorities:

| | | |
|---|---|---|
| Pay and Allowances | ..Officers | ..NG 18102 P 3–0121 A 1405–9 |
| | ..Enlisted Men..NG 18102 P 3–0123 A 1405–9 | |
| Other Expenses | ..NG 18102 P 3–99 A 1405–9 | |

"Disbursements in connection with the encampment are limited to the purposes and in the amounts pro-

vided by 'National Guard Bureau Reservation Funds' issued pursuant to Training Authority cited above.

"The travel directed and expense incurred is necessary in the military service." (Italics ours.)

Thus the federal government bore all the expense of the encampment and training at Camp Bullis. In addition, the federal laws provide for the medical care and hospitalization of enlisted men who suffer personal injury while in training and in case of death necessary funeral expenses. Sections 164a and 164c, Title 32, U. S. C. A. It may be that, because of the attention given these details by the federal government, the legislature of our state limited its liability to caring for the enlisted men when on duty in the state. If the encampment for field training had been in Arizona, in pursuance of an order of the Governor, Andrews' *per diem* would have been $2.50, as provided in amended section 2220, and payable out of the appropriation of $19,000 for "Pay of enlisted men, field training," and there would have been a wage basis upon which to fix the compensation for death benefits, as also to fix insurance premiums.

It is claimed by petitioners that the state paid to the Industrial Commission the premiums required for compensation insurance of the members of the National Guard. There is no proof in the record to sustain this claim, but if it is true the premiums paid must have been on the basis of the enlisted men's pay while on state duty, as the state had no basis upon which to calculate premiums for services in field training at Camp Bullis, and no authority to insure such enlisted men.

While the ground upon which the Industrial Commission rejected the petitioners' claim was probably erroneous (and that question we do not decide), such rejection was justified for the reason that Andrews was drawing no pay from the state when and where

he met his death and there exists no basis for fixing death benefits.

The award is affirmed.

LOCKWOOD and McALISTER, JJ., concur.