212 P.2d 403

**GRIFFITH et al. v. NATIONAL GUARD, MILITARY DEPARTMENT, STATE OF IDAHO et al.**

No. 7534.

Supreme Court of Idaho.

Dec. 8, 1949.

Robert E. Smylie, Atty. Gen., Glenn A. Coughlan, Asst. Atty. Gen., for appellants.

Thomas Y. Gwilliam, W. W. Wander, Nampa, for respondent.

90

GIVENS, Justice.

Deceased, Quentin G. Griffith, regularly employed as a policeman at Nampa, also a Second Lieutenant with over six years service in the Federally recognized Idaho National Guard, was accidentally killed in flight training, survived by his widow and one minor child.

A compensation agreement was executed by his widow, the authorized agent of the Idaho National Guard and the State Insurance Fund, its insurance carrier, reciting that deceased—

"* * * an employee of National Guard, Military Department State of Idaho at Gowen Field, Boise, Idaho, sustained a personal injury by accident arising out of and in the course of his employment which injury resulted in his death on the same day." (September 11, 1948)

That his rate of pay was $746.50 per annum or an average of $14.36 per week for attending training periods on an average of two hours per week; that the National Guard, Military Department, State of Idaho, had insured its liability under the Workmen's Compensation Law of the State of Idaho with the State Insurance Fund, and that said insurance was in full force and effect on the fatal day; and provided for compensation of $8.00 a week until the minor child became eighteen years of age, if then unmarried.

The Board refused to affirm and hearing was held on one issue, thus stated by the Board:

"There is but one disputed question involved in the case, namely, the proper determination of decedent's average weekly wages on which death benefits are to be computed."

■ James M. Trail, Base Department Commander for the War Department at Gowen Field, testified deceased was a Federally recognized National Guard officer

employed by the National Guard of the State of Idaho; that his yearly earnings were $751.02 based on the daily rate of pay for an officer of his rank and experience for only the authorized 48 army drills per year, plus two weeks active duty per year, but that the yearly pay for full service of like rank and grade, thus broken down, is: the base pay of a 1st Lieutenant or a 2nd Lieutenant with five or more years experience (deceased had more than six), $200 per month, $100 additional per month for flying, which is 50% of base pay; 5% of the sum of those items for each three years of service, making an additional 10% of the combined, or an additional $30.00 per month; $75.00 per month rental allowance, and $42.00 per month subsistence, which is 70¢ per day for deceased and his wife, or $21.00 per month each. If the yearly pay was only $746.50, the weekly pay would be $14.36 and the widow and one child entitled to 55% thereof, would receive less than the maximum of $12.00 per week.

The proper rule for the determination of the weekly wage in the kind of employment deceased was engaged in with the National Guard is that announced in Flynn v. Carson, 42 Idaho 141 at page 153, 243 P. 818, approved on this point in Kelley v. Prouty, 54 Idaho 225 at page 244, 30 P.2d 769. In other words, the measure is what an employee of the class and grade held by deceased could earn in the employment when carried on for a full year, in which the deceased was engaged, but not other unrelated employment. Such pay was shown to be $447.00 per month; thus the 55% would be more than $12.00 and the Board properly awarded the $12.00. In re Gagnon, 228 Mass. 334, 117 N.E. 321, 21 A.L.R. 1528; In re Quebec's Case, 247 Mass. 80, 141 N.E. 582, 30 A.L.R. 996; State v. Industrial Commission of Ohio, 127 Ohio St. 217, 187 N.E. 768; Smith v. Utah-Idaho Sugar Co., 63 S.D. 45, 256 N.W. 261; 58 A.L.R. 1396.

The above criteria have been specifically applied to the accidental death of an officer killed while on training duty with the National Guard. Merrill v. State Military Department, 152 Md. 474, 136 A. 897. While deceased in this particular was on duty only for the 48 training periods and camp period, he was mandatorily subject to extended and unlimited duty.

▮▮▮ Though not urged before the Board—hence no specific finding thereon— the Fund now argues that Sec. 72-103, I.C. 1945 Session Laws, Ch. 76, p. 112 at page 119, excluded the National Guard as covered employment and that National Guard personnel or their dependents may secure benefits only under Sec. 46-608, I.C., or Public Law 108, 81st Congress, Ch. 225, First Session, S. 213, Act June 20, 1949, 63 Stat. 201, 32 U.S.C.A. § 160a.

We pass without deciding whether such contentions were timely made. The title of Chapter 76 clearly discloses the Legislature did not intend to eliminate the Na-

tional Guard as covered employment, because of the following reasons: first, the limited scope of the title:

"* * *; amending section 43-903 Idaho Code Annotated to provide that if any fireman or wife or minor child or dependent shall be entitled to receive workmen's compensation, the payment of such workmen's compensation shall be credited to the amount payable under this act; * * *."

That part of the body of the statute going beyond and not reflected in the title, must be disregarded. Art. 3, Sec. 16 of the Constitution of Idaho. It is a matter of legislative intent, not insufficiency of the title. Turner v. Coffin, 9 Idaho 338, 74 P. 962; State v. Mead, 61 Idaho 449 at page 455, 102 P.2d 915; Thayer v. Snohomish Logging Co., 101 Wash. 458, 172 P. 552 (2-4); Traders' Compress Co. v. Precure, 107 Okl. 191, 231 P. 516 at page 519 (7); Ayers v. City of Tacoma, 6 Wash.2d 545, 108 P.2d 348 at page 353; Valley Nat. Bank of Phoenix v. Glover, 62 Ariz. 538, 159 P.2d 292 at page 296–297:

"In determining the extent and operation of the act we have to consider not only the law itself but its title. The title begins with the words "Relating to veterans" and then proceeds to qualify this general provision by the following, "providing that minority shall not be a legal disability in receiving servicemen's benefits." It is our view that the last-mentioned pro-

vision limits the operation of the act to matters coming within its purview."

Second, the internal structure of the statute shows the elimination of the National Guard was not the thought of the Legislature, in that asterisks were inserted where there was intentional elision and none appears where the reference to "National Guard" was dropped.

Sec. 46-606, I.C. and Public Law 108, 81st Congress, Ch. 225, First Session, S. 213, if applicable, provide at most only for deductions of pensions from workmen's compensation payments or an election, and Sec. 46-608, I.C. obviously is not applicable.

■ The Fund now argues the agreement, not having been approved by the Board, was of no force or effect in its recitals that the deceased was killed in covered employment; therefore, does not govern and argues that deceased was not a member of the Idaho National Guard on duty within the meaning of Sec. 43-903, I.C.A., as amended, 1937 S.L. ch. 71, p. 94, and as we have held the extant statute comprehends, because he was paid by the Federal Government and the Governor had not called the National Guard for service. Though making this bald statement, appellants' brief contains no citation of either statute, decisions, National or State Military Orders, or other specific law supporting such a proposition and there is authority to the contrary, State v. Carter, 31 Wyo. 401, 226 P. 690 at page 693; where the training is in the State of en-

listment, Andrews v. State, 53 Ariz. 475, 90 P.2d 995, as here. While the agreement was not approved by the Board, it was not withdrawn and at the conclusion of the case, the record indicates it was not in any way repudiated by appellants, when it should have been to be consistent with the present attitude of the Fund:

"Mr. Gwilliam: I assume that the record shows there wasn't any question about this man being killed while in the scope of his employment?

"Mr. Oppenheim: (member of the Board) That is all in your agreement between the parties."

and that it was considered as part of the record, the basis of the award. The recital contained in the agreement, therefore, evidently was considered by the Board to be pertinent and controlling and similar in effect to the consideration given an agreement approved by the Board and held by us in Blackburn v. Olson, 69 Idaho 428, 207 P.2d 1160 at 1163, to be binding as equivalent to a finding by the Board.

Furthermore, the report of the National Guard, Military Department, State of Idaho, signed by its authorized officer, giving the employer's notice of death, indicated the National Guard was deceased's employer and that he was killed in his occupation as a 2nd Lieutenant in the Idaho National Guard. In the absence of clear authority, and there is an absence of any, to the contrary, the record completely jus-

tified the evident, though unexpressed conclusion of the Board that deceased was killed September 11, 1948, by an accident arising out of and in the course of his covered employment with the Idaho National Guard, Military Department, State of Idaho.

The Order of the Board is approved. Costs awarded to respondent.

HOLDEN, C. J., and PORTER, TAYLOR and KEETON, JJ., concur.