**HARTFORD ACCIDENT & INDEMNITY CO. v. DURHAM.   (No. 1643.)**

(Court of Civil Appeals of Texas. Amarillo. April 21, 1920. On Motion for Rehearing, May 19, 1920.)

**1. Master and servant ⇐⇒375(1) — Automobile truck helper held killed in course of employment.**

Where furniture driver, after having delivered furniture to nearby town, instead of immediately returning, proceeded to another city, where he became intoxicated, a helper on the truck who was under the control of the driver, and who was killed on return trip, was killed in the course of his employment, since, upon driver's failure to immediately return, he was not required to abandon the truck and seek other conveyance back to home town.

**2. Master and servant ⇐⇒403—Employer has burden of proving intoxication as defense.**

In an action under Employers' Liability Act, where intoxication of employé is pleaded as a defense under Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1, defendant has burden of affirmatively establishing such intoxication.

**3. Master and servant ⇐⇒381—Intoxication, to constitute defense under Employers' Liability Act, must have contributed to accident or disability.**

Intoxication, to be available as a defense under Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1, in action under Employers' Liability Act, must have contributed to the happening of the accident or the disability resulting therefrom.

**4. Master and servant ⇐⇒381—Intoxication of employé held not proximate cause of accident.**

That employé killed when truck in which he was riding was overturned as result of driver's negligence was intoxicated would be no defense in action for his death under Employers' Liability Act, where no act of employé contributed to injury, causing death; such intoxication not being the proximate cause.

**5. Master and servant ⇐⇒418(5)—Method of calculating compensation for death held not ground for complaint.**

In action for death of employé under Employers' Liability Act, defendant could not complain, on appeal, of court's failure to calculate the compensation due exactly as required by the statute, under Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—14, 5246—82, where amount allowed was less than it would have been if statute had been strictly followed.

**6. Master and servant ⇐⇒405(6)—Lump sum held properly awarded for employé's death.**

In action for death of employé under Employers' Liability Act, *held,* under the facts, that court properly awarded a lump sum rather than a weekly allowance.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by Sophronia Durham against the Hartford Accident & Indemnity Company. Judgment for plaintiff, and defendant appeals. Affirmed.

J. J. Eckford, of Dallas, for appellant.

W. R. Simmons, of Weston, W. Va., and Parks & Hall, of Dallas, for appellee.

HALL, J. This suit arose under the Employers' Liability Act (Acts 1913, c. 179 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz]), and was instituted by appellee, the widow of George Durham, deceased, against the Hartford Accident & Indemnity Company, the Haverty Furniture Company, and the Texas Employers' Insurance Association. At the time of the trial appellee dismissed her cause of action as to the last-named defendants, proceeding against the appellant alone. It was shown that Geo. Durham was injured December 22, 1917, and that death resulted from said injuries on December 26th following. Appellee filed her claim with the Industrial Accident Board of Texas, which on April 26, 1918, rendered judgment for her against appellant in the sum of $9.52, for 360 weeks, being 60 per cent. of a weekly wage of $15.87. The Accident Board refused to render judgment for a lump sum. Both parties filed objections to the award of the Accident Board, and the case was transferred to the district court of Dallas county.

Appellant's defense is, in substance, that George Durham did not sustain the injuries which produced his death while in the course of his employment, in that he, together with one Fred Meyers, a fellow employé of the Haverty Furniture Company, were sent by said Company from its place of business in the city of Dallas with an automobile truck loaded with furniture to be delivered to a customer at Arlington, a town situated in Tarrant county, about 16 miles west of the city of Dallas, and midway between Dallas and Ft. Worth; that, contrary to the rules and regulations of said furniture company, prohibiting employés from drinking intoxicating liquors while on duty, and while in the course of their employment, the said George Durham and Fred Meyers, after delivering said furniture at Arlington, went in said truck to the city of Ft. Worth, where intoxicating liquor was purchased and drunk by both of them; that said Meyers became irresponsibly intoxicated, and in said condition undertook to drive said truck from Ft. Worth to Dallas, and while in such condition the truck was overturned by negligence of Meyers, which produced the injuries directly and proximately causing Durham's death; that the said Durham accepted intoxicating liquor from Meyers, drank the same, acquiesced in, consented to, and participated in the said acts of said Meyers in going to Ft. Worth and not returning to Dallas from Arlington, and by

⇐⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

reason of their skylarking and other acts stated, and by reason of violating the instructions and rules of their employer while outside the course of their employment, and at the time of the injuries, neither the said Durham nor the said Meyers were acting in the course of their employment; that said injuries which caused the death of Durham occurred while the said Durham was in a state of intoxication.

The court submitted to the jury only two issues, the first being:

"What was the average weekly wage of George Durham for the year immediately preceding his death?"

The jury answered: "$16.50."
The second question is:

"Would a failure of the defendant to make a lump sum settlement with the plaintiff of the compensation due her on account of the death of her husband work manifest hardship and injustice to her?"

This was answered in the affirmative.

Appellant requested first a peremptory instruction, which was refused. Whereupon it requested two special issues, as follows:

"(1) Were the injuries sustained by George Durham in the course of his employment?

"(2) Did George Durham sustain his injuries while in a state of intoxication?"

The refusal to submit these special issues is made the ground of several assignments of error. The evidence shows that the deceased, George Durham, was a negro about 33 years of age; that he had been working for the Haverty Furniture Company, in their furniture store in the city of Dallas, for several years, performing any and all duties required of him and which he was capacitated to perform. James L. Hogg, the shipping clerk for the furniture company, testified that his employer had sold some furniture to a customer at Arlington; that he had ordered Meyers, as the truck driver, and George Durham, to load the furniture on a truck and deliver it to the customer at Arlington, to obtain the customer's receipt for the shipment, and return to Dallas; that they were not authorized to go on to Ft. Worth, beyond Arlington. He further testified that Durham was not the driver of the truck; that Meyers had charge of it, and Durham was wholly a helper and under the direction of Meyers while on the trip. The uncontradicted evidence shows that the delivery was made; that Durham had nothing whatever to do with handling or driving the truck. Meyers testified that after delivering the furniture at Arlington he went on to Ft. Worth to get some whisky for Christmas; that he did not say anything to anybody about going over there, and that Durham did not know he was going until witness told him at Arlington; that Durham said nothing but just went along. The accident occurred on the return trip after the

truck had passed Arlington en route to Dallas. On direct examination Meyers testified with reference to the issue of intoxication as follows:

"While in Ft. Worth I drank two or three glasses of beer. George Durham only took one glass of beer; that is all he took to my certain knowledge; if he drank any more, I know nothing of it. He was on the truck, and we just got off and went into the saloon. * * * I was drinking at the time. George Durham didn't have anything whatever to do with the driving of that truck at any time on that trip. He had nothing whatever to do with my going to Arlington, thence to Ft. Worth, and returning to Dallas by way of Arlington and Grand Prairie. George Durham was sober at the time of the accident and at all times on the trip."

On cross-examination upon this issue he testified:

"On the way back I opened a half pint of whisky and drank some and gave George a drink. I didn't give the half pint to him. I bought about 11 or 12 pints of whisky at Ft. Worth, and all of them were in the truck when we started on the return trip. I only took one drink of whisky after leaving Ft. Worth. George didn't drink over two or three glasses of beer at Ft. Worth. * * * George didn't buy any whisky. * * * The barkeeper made me a present of half a pint. While I was in the saloon the truck was standing out at the front. I didn't stand there and watch it, but when I went in George was on the seat. I got a glass of beer for him when I drove up, and he got out and went in and drank it, and when I came out he was sitting up there on the truck waiting for me. I was in the saloon about 30 minutes or an hour, perhaps."

The appellee testified that she saw her husband at the sanitarium in Dallas after his return and asked him how the accident happened, that he had not received any medical attention at that time, and her testimony is:

"He was not drunk at the time. He talked with just as good sense as I do, and I asked him if he was drunk, and he told me that he was not, and I know he was not, because he talked with too good sense to be drunk. I never knew him to be drunk while I knew him. * * * I never saw him drunk in my life."

Article 5246—1, Vernon's Sayles' Civil Statutes, provides that, in an action to recover for the death of an employé resulting from personal injuries sustained in the course of his employment, it shall not be a defense: (1) That the employé was guilty of contributory negligence; (2) that the injury was caused by the negligence of a fellow employé; (3) but said article further provides that the employer may defend upon the ground that the injury was caused while the employé was in a state of intoxication.

[1] Under this record we are of the opinion that the injuries were sustained by George Durham in the course of his employment. He was under the direction and control of

Meyers, the driver of the truck. While he entered no protest when he learned that Meyers intended to go to Ft. Worth, it does not appear that any objection of his would have been considered. He was not required to abandon the truck and seek other means of conveyance back to Dallas. He had the right to return to Dallas in the conveyance provided by his employer, and had no authority to demand that Meyers, who had been placed in control of the truck, and was temporarily in authority over him, should abandon the trip to Ft. Worth and return direct to Dallas from Arlington.

[2-4] Where intoxication is pleaded as a defense, the burden of proof rests upon the defendant to affirmatively establish the fact of such intoxication. 1 Honnold on Workmen's Compensation, § 142, p. 567. "To be available as a defense, intoxication must contribute to the happening of the accident or the disability resulting therefrom." Id. If it be admitted that the evidence quoted above is sufficient to require the submission of the issue to the jury, yet, under the circumstances, an affirmative finding upon that issue would not exonerate appellant. The injury did not result from any act of the deceased. He was not driving the truck, did not fall from the seat and was not injured until the truck overturned as the result of the negligence of his fellow employé, Meyers. Under these circumstances his intoxication could not be the proximate cause of the injury if the fact had been established. We conclude the court did not err in refusing the requested instructions.

[5] Upon the jury's findings the court rendered judgment in favor of appellee for the sum of $3,353.13. The judgment recites in part:

"It appearing to the court from the undisputed evidence in the case, coupled with the findings of the jury, that the average weekly wages of plaintiff's husband, George Durham, for the last year immediately preceding his death, was the sum of $16.50 per week, and that plaintiff therefore is entitled to compensation at the rate of $9.90 per week for 360 weeks, beginning the 22d day of December, 1917, which would total the sum of $3,564, and at the date of this judgment the sum of $514.80, being 52 weekly payments at $9.90 per week, commencing December 22, 1917, to December 22, 1918, is due and unpaid, and the court finds that a discount of $210.87 should be taken from the total amount of $3,564, and the remainder, $3,353.13, should be awarded to plaintiff as a lump sum settlement in this case; that the court, in arriving at such discount, takes into consideration the fact of the unpaid 52 weekly payments for the year commencing December 22, 1917, to date of trial, for which plaintiff has received no benefit or interest thereon, and the court offsets the discount or interest on a like amount of $514.80 due the plaintiff for the succeeding year; that is, from December 22, 1918, to December 22, 1919. Allowing the defendant no discount on said sum for its payment now, the failure to pay the compensation for the preceding year being offset by payment now of compensation for the succeeding year, and then upon the balance of $2,534.40 due during the remainder of the 360 weeks, the court allows a discount on the basis of 5 per cent. for payment now in a lump sum the sum of $210.87, leaving a balance after the discount of $2,323.53, which, after adding the sum of $1,029.60, makes a total lump sum now due plaintiff of $3,353.13, which amount the court finds to be a reasonable and proper lump sum settlement to which plaintiff is entitled, under all the facts of the case, of her total claim for compensation at the rate of $9.90 per week for 360 weeks commencing December 22, 1917."

V. S. C. S. 1918 Supp. art. 5246—14, provides that, if death should result from the injury, the association shall pay the beneficiaries a weekly payment equal to 60 per cent. of his average weekly wages, not more than $15, nor less than $5 a week, for a period of 360 weeks, from the date of the injury." Article 5246—82, Id., in defining the term "average weekly wages," says the same shall mean:

"1. If the injured employé shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wages shall consist of 300 times the average daily wage or salary which he shall have earned in such employment during the days when so employed. * * * 5. The average weekly wages of an employé shall be one-fifty-second part of the average annual wages."

While the court has not made the calculation exactly as we think the statute required, and by calculation shown to have been made by the recital in the judgment the court arrived at a sum less than our figures show should have been awarded, appellant's assignment complaining of the amount allowed will be overruled. The testimony is sufficient to support the jury's finding that the deceased was receiving a weekly wage of $16.50 for the year preceding September 1st. The manager of the Haverty Company testified that the deceased had threatened to quit work on September 1st and pick cotton during the fall, and in order to induce him to remain until the end of the calendar year had promised him a bonus of $2.50 per week, which the company intended to pay at the end of the year. This would have entitled the deceased to a weekly wage of $19 beginning September 1st, or approximately for a period of 16 weeks up to the time of the injury. Allowing the deceased $19 for 16 weeks and $16.50 for 36 weeks would have averaged a fraction over $17.20 per week. Sixty per cent. of this for the time allowed, less the deductions made by the court, amounted to more than the total sum decreed to appellee.

[6] The remaining contention to be disposed of is that there is no evidence which authorized the court to render judgment for a lump sum rather than for a weekly allowance. It was shown by undisputed testimony that at the time of George Durham's death he had purchased some lots, upon which he was making periodical payments; that he owed grocery bills, clothing bills, and other amounts; that after his death his wife was in bad health and was forced to support herself, her widowed mother, who was 55 years of age, and her grandmother, 89 years of age, and earn her living by cooking; that in addition to these expenses she was forced to pay out of her wages as a cook her house rent; that she was without means to pay her debts, and after the death of her husband had lost one of her lots by her inability to make the periodical payments of purchase money; that something more than $200 was still due on the two lots left to her. She testified that as soon as she could get the money she intended to build her a house on one of the lots, and thereby save house rent. We think this evidence is sufficient to warrant the court in granting her a recovery in a lump sum. Texas Employers' Insurance Association v. Downing, 218 S. W. 112.

Finding no reversible error in the judgment, it is affirmed.

### On Motion for Rehearing.

Appellant's motion for rehearing presents no new matter and no additional authorities. After reviewing the contentions urged in the brief, we see no reason for otherwise disposing of the issues. The motion is therefore overruled.

Appellant also files a request for additional findings of fact which is granted. We find that the rules of the Haverty Furniture Company prohibited the drinking of intoxicating liquors by its employés while on duty. We further find that George Durham did drink intoxicating liquors while at Ft. Worth.