## HENRY A. QUEBEC'S (dependent's) CASE.

Suffolk.    October 19, 1923. — November 28, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, PIERCE, & JENNEY, JJ.

*Workmen's Compensation Act,* Double employment, What subscriber liable, Amount of compensation.    *Agency,* Existence of relation.

The trustees of a building trust renting, operating and managing a building in a city, the various floors of which were rented to mercantile and manufacturing concerns, also owned a controlling interest in the capital stock of a corporation which owned and operated a general storage and warehouse building in the same city. One, who was employed by the corporation as its general manager, also was employed by the trust as superintendent of its building and had the duty of employing and directing the employees of both. He hired a general repair man to do work in both buildings, who devoted about one third of his time to the building owned by the trust. Such employee received $25 a week, signing two pay slips, one acknowledging the receipt of $10 as one week's wages from the trust and the other of $15 from the corporation. While inspecting and oiling the passenger elevator

in the building of the trust, this employee received an electric shock causing immediate death. Both the trust and the corporation were insured by the same insurer, the premium paid by each being based upon the particular kind of business it carried on and upon its pay roll. The widow of the decedent claimed compensation under the workmen's compensation act based upon a weekly wage of $25, and the Superior Court affirmed a decision of the Industrial Accident Board granting compensation upon that basis. *Held*, that

(1) The corporation and the trust were distinct legal entities notwithstanding the fact that certain persons were financially interested in both;

(2) The provisions of G. L. c. 152, § 1, cl. 1, relative to the computing of compensation where " it is impracticable to compute the average weekly wage," were not applicable;

(3) The wages which determined the compensation were those earned in the employment where the injury happened, namely, in the employment by the trust;

(4) The decree must be reversed and the case remanded to the Industrial Accident Board with directions to dismiss the claim against the corporation and to make an award on the claim against the trust based on the wages of $10 per week paid by the trust to the employee.

CERTIFICATION to the Superior Court under the workmen's compensation act of a decision of the Industrial Accident Board entered upon a claim by Rose Quebec, widow of Henry A. Quebec, who was alleged to have been injured while employed by " Lowell Building Trust " and Bay State Storage Warehouse, both of which were insured by the same insurer, the decision of the board being in substance that the compensation to be paid to the widow should be based upon the average weekly wages which the employee had received from both employers.

In the Superior Court the case was heard by *Morton*, J., and by his order a decree was entered in accordance with the decision of the Industrial Accident Board. Material facts are described in the opinion. The insurer appealed.

*W. W. Jump*, for the insurer.

*J. H. Gilbride*, (*J. J. O'Sullivan* with him,) for the claimant.

DECOURCY, J. The employee received an electric shock, causing immediate death, while inspecting and oiling the passenger elevator machinery in the Burgess Lang Building, located at the corner of King Street and Middlesex Street in Lowell. The building was owned by the Lowell Building

Trust; a trust, created by deed, to improve, develop and manage real estate; and the various floors were rented or leased to mercantile and manufacturing concerns. At the time of the accident, the trustees were William H. Burgess and Howard W. Lang. On Jackson Street, near the above building, was one owned by the Bay State Storage and Warehouse Company, a Massachusetts corporation engaged in what is commonly known as a general storage and warehouse business. Said Burgess and Lang owned a controlling interest in the stock of this corporation. Arthur V. Harrington was employed by said corporation as its general manager at Lowell, and also by said trust as superintendent of the Burgess Lang Building; and had the duty of employing and directing the employees of both. Prior to August 1, 1921, Harrington was assistant manager of the warehouse business, and his salary was paid by that corporation alone; but after that date, when he assumed the above mentioned duties, he was paid by two separate checks, one from each of said concerns.

For about a year before the accident, Quebec, who was hired by Harrington as a general repair man, did work in both buildings. In that of the trust he devoted about one third of his time, under the general direction of Harrington, daily inspecting and oiling the elevators, and doing the carpenter work, glazing, and any small pipe work that did not require a plumber. He would then go back to the warehouse, attend to repair work around there, and, if all his time was not so taken up, would go out on his old job as chauffeur. Quebec was paid $25 per week: and signed two pay slips, one acknowledging the receipt for a week's wages of $10 from the Lowell Building Trust, and the other of $15 from the Bay State Storage and Warehouse Company. The sole issue before us is whether the average weekly wages, on which the compensation of the dependent widow is to be based, was $10, which was paid by the Lowell Building Trust, for whom the employee was working at the time of the accident, or $25, the total wage received by him from both organizations. G. L. c. 152, § 31.

The corporation and the trust were distinct legal enti-

ties notwithstanding that certain persons were financially interested in both. *Brighton Packing Co.* v. *Butchers Slaughtering & Melting Association*, 211 Mass. 398, 403, 404. Each had employees who worked for it alone; although both found it expedient to employ the same superintendent and the same general repair man. Both happened to be insured by the same assurance corporation; but the premium paid by each for compensation insurance was based upon the particular kind of business it carried on, and its pay roll.

The general English law enacted in 1906 (6 Edw. VII, c. 58) on which our act is largely modeled, contains a clause (sch. 1, § 2 b) which expressly provides that " where the workman had entered into concurrent . contracts of service with two or more employers under which he worked at one time for one such employer and at another time for another such employer, his average weekly earnings shall be computed as if his earnings under all such contracts were earnings in the employment of the employer for whom he was working at the time of the accident." Such a provision would cover the case at bar. But the commission which framed the Massachusetts act, although they undoubtedly had this statute before them, did not embody it in form or substance. In the absence of such a clause, the dependent argues that the award of the Industrial Accident Board can be sustained under the clause of § 1 (1) of G. L. c. 152, which provides: " Where, by reason of . . . the nature or terms of the employment, it is impracticable to compute the average weekly wages, as above defined, regard may be had to the average weekly amount which, during the twelve months previous to the injury, was being earned by . . . a person in the same grade employed in the same class of employment and in the same district." This clause was before the court for construction in *King's Case*, 234 Mass. 137, which governs the case at bar. King was employed by the Atlantic Printing Company from Monday to Saturday noon at a weekly wage of $28. For a year he had worked each Saturday night for the Globe Newspaper Company, at $9.20 for the night's work, and was fatally injured while working for that company. It was held that

the compensation should have been based on a weekly wage of $9.20, as it was not impracticable to compute the earnings on that basis. The court said (page 140) " The amount earned by an employee in a particular employment should govern in all cases, in computing the compensation to be paid under the workmen's compensation act, unless the computation becomes impracticable; and the wages which determine the compensation, with the exceptions referred to, are the wages earned in the employment where the injury happens." The opinion distinguishes *Gillen's Case*, 215 Mass. 96, on which the board based its finding in the case at bar. There the employee was a longshoreman, where the " custom. of the employment is for continuous work of a specified kind for different employers." In *Western Metal Supply Co.* v. *Pillsbury*, 172 Cal. 407, also relied upon by the board in the present case, the employee worked as a night watchman for six corporations, and the court treated the Gillen case as controlling in allowing compensation on the basis of all his earnings from the six employers. In harmony with *King's Case* are *Bartoni's Case*, 225 Mass. 349, *Rice's Case*, 229 Mass. 325, and *Marvin's Case*, 234 Mass. 145.

In the Report of the Commission on Compensation for Industrial Accidents, submitting to the Legislature a commentary on the Massachusetts law, it was stated (page 46): " The basic principle of the act is that the cost of injuries incidental to modern industry should be treated as a part of the cost of production. The act was framed with that end in view. " In *Gagnon's Case*, 228 Mass. 334, where the meaning of " average weekly wages " was considered, it was said (page 337): " It is plain that this definition confines the ascertainment of wages to the actual employment at the time of the injury, save in the single instance where that is impossible by reason of brief employment in a line of work unusual to the employer. . . . This definition and the decisions rendered respecting it follow directly the ' basic principle of the act ' as above stated, to the effect that ' the cost of injuries incidental to modern industry ' should be regarded as a part of the cost of production. The average weekly wages is throughout the act ascertainable only by

reference to the wages actually paid at the expense of the industry at which the employee is working. Save in carefully specified exceptions, it is to be ascertained only by reference to the wages paid by the particular employer to the injured employee. It is apparent that the standard for determining the entire cost of production, so far as it includes the cost imposed by the workmen's compensation act, may be found by reference to that particular industry and employer." Further, as throwing light on the question as to who is to be regarded as the "employer" for the purposes of the act, the language of the court in *Chisholm's Case,* 238 Mass. 412, 419, is significant. "The test to determine which of different persons is the employer ordinarily is, who has direction and control of the employee, and to whom does he owe obedience in respect of the particular matter in hand."

It follows that the decree must be reversed, and the case remanded to the board with directions to dismiss the claim against the Bay State Storage and Warehouse Company, and to make an award in the claim against the Lowell Building Trust based upon the wages of $10 per week paid by said trust to the employee.

*Ordered accordingly.*