## H. M. Embrey v. W. L. Ligon & Company.

No. 5039.   Decided January 2, 1929.
(12 S. W., 2d Series, 106.)

*Bryan, Stone, Wade & Agerton,* for appellant.

It appears from all the evidence, and especially from that given by plaintiffs, appellees herein, that after fair opportunity and without any fault of the owner, the efforts of appellees to negotiate a sale between the defendant, appellant herein, and G. W. Haltom came to naught, and that subsequent thereto after all negotiations had failed and ceased the sale was made by defendant to Haltom (the purchaser) as the result of independent negotiations between themselves and without the aid and assistance of plaintiff; therefore the court should have granted defendant's motion for a peremptory instruction requested after all of the evidence was in and before the court had given his charge to the jury.   Parkey v. Lawrence, 284 S. W., 283; Goodwin v. Gunter, 109 Texas, 56; Pryor v. Jolly, 91 Texas, 86; Hancock v. Stacy, 103 Texas, 219; Burch v. Hester & Lowhorn, 109 S. W., 399; Newton v. Conness, 106 S. W., 892; Karr v. Brooks, 129 S. W., 160; English v. William George Realty Co., 117 S. W., 996; Duval v. Moody, 60 S. W., 269; Wilcoxson v. Suddeth,

229 S. W., 352; Witt v. Byrum, 135 S. W., 687; Knox & Nunn v. Pierce, 146 S. W., 703; Aukerman v. Bremer, 209 S. W., 261; Harper v. Davis et al., 295 S. W., 1112.

*R. E. Rouer, Gillis A. Johnson,* and *R. B. Young, Jr.,* for appellees.

When a real estate broker is instrumental in bringing together a purchaser and the seller and they consummate a sale and purchase of the property on terms that are satisfactory to the seller the agent is the procuring cause of the sale and is entitled to his commission even though several months in time elapsed between the time that the name of the purchaser is communicated to the seller and the deal is finally consummated. Goodwin v. Gunter, 195 S. W., 848; Hancock v. Stacy, 125 S. W., 884; Keener v. Cleveland, 250 S. W., 151; Masters v. Hunt, 197 S. W., 219; Pierce v. Nichols, 110 S. W., 206; Shelton v. Cain, 136 S. W., 1133; Stone v. Cox, 244 S. W., 620; Webb v. Harding, 211 S. W., 927.

MR. PRESIDING JUDGE SHORT delivered the opinion of the Commission of Appeals, Section B.

The following is a certified question from the Honorable Court of Civil Appeals of the Second District:

"On October 1, 1924, H. M. Embrey, who was the owner of 86 acres of land in Tarrant County, consisting of two tracts out of different surveys, listed the same for sale with the partnership firm of W. L. Ligon & Company, who were engaged as real estate brokers in the city of Fort Worth. The price at which the land was listed was $100 an acre. The usual and customary commission to a broker for procuring a purchaser was 5 per cent of the selling price, and there was an implied agreement on the part of Embrey to pay a commission at that rate. The brokers made repeated efforts to find a purchaser for the land with no prospect of success until the middle of October, 1925, when John Champ, an employee of the firm, brought the property to the attention of G. W. Haltom, a merchant residing in Fort Worth. Haltom refused to purchase at the price of $100 an acre, but offered to buy at $75 an acre. D. P. Brown, one of the members of the firm, reported this offer to Embrey, who declined it. A few days later Champ again saw Haltom, who raised his offer to $80 an acre, and that offer was likewise declined by Embrey when it was reported to him. Champ renewed his efforts to sell to Haltom without success, his negotiations with Haltom in an effort to make the sale continuing for about ten days or two weeks and ending

about the first of November, 1925. The brokers made no further effort to sell to Haltom, and all their negotiations with him with respect to a sale ceased on or about November 1, 1925. When those negotiations came to naught, Haltom dismissed from his mind the matter of purchase of the property until on or about May 4, 1926, when he entered into direct negotiations with Embrey for the purchase of the land and succeeded in purchasing it for $97.50 an acre. When W. L. Ligon & Company heard of the sale, they instituted this suit against Embrey to recover a commission of 5 per cent on the price so realized, and from a judgment in their favor Embrey has prosecuted this appeal.

"Plaintiffs' suit was based upon the allegation that on or about the first day of November, 1925, they did procure for the defendant a purchaser for said land and premises in the person of G. W. Haltom, of Fort Worth, Texas; that they conveyed the name of said prospective purchaser to said defendant; that the said G. W. Haltom was ready, willing and able to purchase said land and premises and that the said sale to the said G. W. Haltom was actually made and effected and a proper deed was duly executed, delivered and accepted in consummation of said sale for a total consideration of Eight Thousand and Three Hundred Ninety-five Dollars $8,395.00) and that said sale was finally consummated as the proximate result of the efforts of the plaintiffs on or about the 4th day of May, 1926.

"In answer to special issues, the jury found that plaintiffs were the efficient and procuring cause of the sale to Haltom; that at the time Embrey listed the property with the plaintiffs he impliedly agreed to pay plaintiffs a commission of 5 per cent in the event they should bring about the sale of the property. The jury further found that subsequently to November 1, 1925, and prior to May 4, 1926, plaintiffs did not abandon their efforts to sell the property for the defendant. It may be noted here that this was not a finding that plaintiffs did not abandon their efforts to sell to Haltom. Upon those findings, and others not necessary to be mentioned, judgment was rendered in favor of plaintiffs for $419.75, from which Embrey has appealed.

"The facts recited above were all proven by uncontroverted testimony. G. W. Haltom also testified without contradiction that his only reason for offering first $75 and later $80 an acre for the land when it was presented to him by Champ was that he owned two other tracts adjoining the Embrey land and he wanted to close up a lane

between the Embrey land and one of his tracts. He further testified that when Champ told him that Embrey's land could not be purchased for less than $100 an acre, he told Champ that he would not pay that price. He further testified that later when he decided to fence his two tracts and when he discovered that he would have to build a fence around the Embrey land, he went to see Embrey to apologize to him about closing up his land. 'I got that matter straightened out with him, then I said, "Mr. Embrey, if you want to sell that land—". He said, "I am not particular about selling it but I would sell". I asked him how much did he want for it and Embrey said; "I wouldn't take less than $100 for it! I told him that was too much. We argued about twenty minutes pro and con and then I told him, "if you sell the place for $100 you will have to pay a commission on it and wouldn't you take $95 for it?" He said, "No, I don't care anything about selling it." I told him all right and started to leave. Mr. Embrey then told me, "I will split that difference with you and make it $97.50". I told him that I would let him know the next day. I called him up the next day over the telephone and argued the matter with him again but didn't have any luck and so I told him that I would just take the place at $97.50.'

"The testimony of Embrey relative to the conversation between him and Haltom on May 4, 1926, was substantially to the same effect as that given by Haltom, with the exception that Embrey went more into details and recited more of the conversation, his testimony detailing repeated statements by him to Haltom that he did not care to sell the property at all, and repeated efforts of Haltom to induce Embrey to reduce the price of the property to $95 an acre, and Embrey's final agreement to sell for $97.50 an acre. Embrey further testified that in that conversation Haltom said 'remember we have no commission man, there is no real estate man involved in this, and why not get down and trade right.' In reply to that statement the witness said, 'Well, I have never thought much about it.' Relative to that conversation, Embrey further testified as follows:

"He said, 'there is no commission in this, we have got no real estate men involved in it, why not get down and trade right, we don't have to pay any commission.' I then said, 'all right, Mr. Haltom, if there is no commission to come out, and you want to buy it and will make it all cash, I will take $97.50.' He said, 'I will let you know tomorrow, I will let you know in the morning.' I

waited the next day until about four o'clock and he called me and says, 'Embrey, how about that farm, I believe I will take it.' "

W. L. Ligon, one of the plaintiffs, testified in part as follows:

"Yes, I know our firm tried to sell Embrey's place in 1925. Mr. Embrey was in our place quite often but the only conversation I remember now was on the first of last January, 1926. Mr. Embrey came in to get us to write an affidavit for him and before he went out he said, 'Brownie, when are you going to sell my farm?' Brown said, 'if Haltom don't take it I will snag a customer pretty soon on it.' Before this, in the year 1925, Mr. Embrey had been to our office quite often and had borrowed money from me on some vacant lots and I had had other business dealings with him. Yes, Brown was trying to sell these farms. He tried to sell it to anybody that came in there looking for a small farm.

"Brown, referred to by Ligon, was one of the members of plaintiffs' firm, but he testified that he never at any time offered the property to Haltom, and that Champ, an employee of the firm, was the only representative of the firm who had any communication with Haltom.

"Champ testified, in effect, that his efforts to sell the property to Haltom ceased on or about November 1, 1925, and that thereafter he made no further effort to induce Haltom to buy the property.

"The proof further showed that plaintiffs first brought to Haltom's attention the matter of the sale of Embrey's land, and that up to the time of the sale plaintiffs still kept upon their books the listing of the property and still made efforts to sell it to other persons than Haltom. But the record further shows that the plaintiffs' failure to bring about the consummation of the sale during the month of November, 1925, while their negotiations with Haltom were still pending, was not caused by any fault of the owner of the land. Nor was there any contention made that they were not given an opportunity to consummate the sale then or thereafter.

"The general rule is that a broker earns his commission when he finds a purchaser ready, willing and able to purchase upon terms satisfactory to the owner, or when through his efforts a sale is effected, yet that general rule is subject to the qualification expressed by Chief Justice Phillips in Goodwin v. Gunter, 109 Texas, 56, wherein, after referring to the general rule noted, he had this to say:

" 'A different state of case is presented and, therefore, a different rule prevails where the broker's effort with a particular buyer has,

after fair opportunity and without any fault of the owner, come to naught, resulting in the failure and termination of his negotiation; and, later, the owner by direct and independent negotiation effects a sale to the same buyer, though upon the same terms originally authorized to the broker. Under such circumstances the broker can not be justly considered the procuring cause of the owner's sale, and the latter incurs no liability to him on that account. Pryor v. Jolly, 91 Texas, 86, 40 S. W., 959; Hancock v. Stacy, 103 Texas, 219, 125 S. W., 884.'

"That decision was followed by this court in Parkey v. Lawrence, 284 S. W., 283 (writ of error denied), in which many other decisions are cited to the same effect in addition to the decisions cited by Justice Phillips in Goodwin v. Gunter.

"From the established facts recited above, and under the authorities noted, this court upon original hearing of the cause sustained appellant's assignment of error to the refusal of the trial court to instruct a verdict in his favor, and reversed the judgment of the trial court and rendered a judgment in favor of appellant. The decision so reached was based upon the conclusion that the evidence showed conclusively as a matter of law that the effort of the plaintiff to induce Haltom to purchase the property was not the proximate procuring cause of the sale made thereafter by Embrey to Haltom, it being our conclusion that it is incumbent upon the broker to show that his efforts were the proximate cause of the sale made, and that that is what is meant in the authorities by the term 'procuring cause.' Our conclusion that under the undisputed facts and under the rule announced in Goodwin v. Gunter, supra, and other authorities cited, as the plaintiff had failed to effect a sale and had ceased further effort to accomplish that result on November 1, 1925, a new and independant cause intervened before the sale was effected, the new and independent cause being the negotiations between Embrey and Haltom on May 4, 1926, which resulted in a sale at that time and but for which Haltom would not have purchased the property.

"A motion for rehearing is pending before us, in which it is urged that the conclusion so reached was erroneous. Upon the merits of that conclusion we are not entirely agreed; Associate Justice Buck being of the opinion that the motion for rehearing upon the question noted should be granted; Chief Justice Connor being inclined to agree with Associate Justice Buck, although entertaining some doubt of the correctness of that conclusion; and Associate Justice Dunklin, who wrote the opinion of this court on original hearing, being of the

opinion that the contention of appellee is without merit. Therefore, we deem it advisable to certify to your Honors the question whether or not the motion for rehearing upon the ground noted should be sustained or overruled.

"The question shown above is the only question upon which we have disagreed, and the only one certified, although there are other assignments of error in the record."

It is apparent, from the certificate, that the conclusion reached by the Court of Civil Appeals, in reversing the judgment of the District Court and rendering one in favor of the appellant, is based upon a finding that the statement of facts shows conclusively, as a matter of law, that the efforts of the real estate agent to induce the purchaser to purchase the property were not the procuring cause of the sale made thereafter by the appellant to the purchaser. We assume that the material facts have been embodied in the certificate and upon that assumption we have reached the conclusion that the motion for rehearing, filed in the Court of Civil Appeals, should be granted.

The Court of Civil Appeals apparently sustained appellant's assignment of error to the refusal of the trial court to instruct a verdict in his favor and reversed the judgment of the trial court and rendered one in favor of appellant upon the finding of fact, that a new and independent cause had intervened after the appellees had failed to effect a sale and had ceased further effort to accomplish that result on November 1, 1925, before a sale was effected on May 4, 1926, holding, as a matter of law, that this fact demonstrated conclusively that appellees had not proved a cause of action. In support of this holding the Court of Civil Appeals apparently rely upon the rule announced in Goodwin v. Gunter, 109 Texas, 56, as stated in this language:

"A different state of case is presented and, therefore, a different rule prevails where the broker's effort with a particular buyer has, after fair opportunity and without any fault of the owner, come to naught, resulting in the failure and termination of his negotiation; and, later, the owner by direct and independent negotiation effects a sale to the same buyer, though upon the same terms originally authorized to the broker. Under such circumstances the broker can not be justly considered the procuring cause of the owner's sale, and the latter incurs no liability to him on that account."

But the facts stated in the certificate in our opinion do not show conclusively, as a matter of law, that the broker's efforts in this case had come to naught and that these efforts had resulted in the failure and termination of the broker's negotiation, nor that the

owner, by direct and independent negotiations, had effected a sale of the land, though the sale in fact was made to the same buyer and practically upon the same terms originally authorized by the owner to the broker. We therefore are of the opinion that the rule in Goodwin v. Gunter, supra, is not applicable to the facts in this case. The trial court having rendered a judgment in favor of appellees upon the findings of fact by the jury, under the issues submitted, as stated in the certificate, and no other issue having been requested, every other fact material to the sufficiency of the judgment must be presumed to have been found in favor of it by the trial judge. The only other material fact not found by the jury, necessary to sustain the judgment of the trial court, under the conditions presented by this case, is that appellees had not abandoned their effort to sell the land before the sale was in fact made, and this fact presumably was found by the trial court in favor of appellees. The certificate contains no evidence that there had been any independent negotiations between the owner of the land and the purchaser of it, at any time previous to the time the owner of the land stated the terms upon which he would sell to the purchaser, which were afterwards accepted, these terms being the same, substantially, as those authorized to be made by the brokers and which were in fact made by them to the purchaser. The certificate shows the existence of the following facts: (1) The property was listed with the appellees more than one year before they found a prospective purchaser. (2) At the time the property was listed with appellees the owner submitted a proposition of $100 per acre. (3) At the time the purchaser, G. W. Haltom, mentioned that he wanted to buy the land of the appellant, he again reaffirmed his proposition to sell at $100 per acre. (4) The appellant did not personally know the purchaser at the time his name was submitted to him by the appellees. (5) The appellant never communicated with the purchaser except through the appellees in their capacity of real estate brokers. (6) The meeting of the purchaser and the owner, which resulted in the sale a few hours thereafter, was their first meeting, from which facts a jury might reasonably conclude that the previous efforts of appellees to sell the land had materially contributed to the agreement which the parties so readily reached, resulting in the consummation of the sale upon practically the original terms.

In Goodwin v. Gunter, supra, it is said:

"Having interested a prospective buyer the broker is entitled to a fair opportunity of making a sale to him upon the terms authorized. That the owner, pending the broker's negotiation, may, in disregard

or repudiation of his obligation to respect the broker's right to conclude the transaction, take the matter into his own hands, avail himself of the broker's efforts, closing a sale upon satisfactory terms and yet deny the broker's right of compensation, is a proposition not to be countenanced."

In the case of Hancock v. Stacy, 103 Texas, 219, 125 S. W., 884, the Supreme Court, in quoting from the case of Chilton & Cole v. Butler, speaking through Justice Brown, says:

"If vendors were permitted to employ brokers to look up purchasers, and call the attention of buyers to the property which they desired to sell, limiting them as to terms of sale, and then, while such purchasers were negotiating, take the matter into their own hands, avail themselves of the labor, services, and expenses of the broker in bringing the property into market, and accomplish a sale by an abatement in the price, and yet refuse to pay the broker anything, the business of a broker would not be worth pursuing."

In the case of Keener v. Cleveland, 250 S. W., 151, the Commission of Appeals uses this language:

"There is no difference where the seller, in prosecuting the negotiations himself, concludes the sale on different terms and for a less price; the rule being that the broker is entitled to his compensation according to the contract if, while it is in force, he procures a purchaser to whom the owner directly makes a sale on terms satisfactory to himself, though for a less amount than that to which the broker was limited."

And again in the case of Webb v. Harding, 211 S. W., 927, the Commission of Appeals says:

"Where, as in the case at bar, the broker procures a purchaser, and the owner voluntarily reduces the price, or sells upon different terms from those provided in his contract with the broker, the sale being actually consummated at a price and upon terms satisfactory to the owner, the broker is entitled to recover upon contract."

To the same effect is the case of Matcek v. Oppenheimer, 298 S. W., 394.

To answer the question certified that the motion for rehearing should be overruled would be to hold, as a matter of law, that four or five or six months is such a length of time as that, if allowed to elapse before the sale is closed, deprives a broker who has introduced the parties and begun the negotiations to his right to a commission. Such a holding might in some cases permit the buyer and seller, who have complete control of the sale, by waiting such length of time to

complete the sale, to deprive brokers of commissions actually earned and to which they are justly entitled.

We therefore recommend that the question certified should be answered, that the motion for rehearing by appellees should be granted.

The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

*C. M. Cureton*, Chief Justice.