**TEXAS EMPLOYERS' INS. ASS'N v. CHITWOOD.**

No. 4474.

Court of Civil Appeals of Texas. El Paso.

Oct. 17, 1946.

Rehearing Denied Oct. 31, 1946.

Eugene T. Edwards, of El Paso, for appellant.

Abner S. Lipscomb and Joseph G. Bennis, both of El Paso, for appellee.

PRICE, Chief Justice.

This is an appeal from a district court of El Paso County, Forty-First Judicial District, in a workman's compensation case tried without a jury.

David Chitwood, an employee of Empire Products Company, a corporation, filed before the Industrial Accident Board a claim for accidental injury against the Texas Employers' Insurance Association, the insurance carrier of Chitwood's employer. This claim was denied, and in due time Chitwood filed suit to set the order aside and to recover compensation. On the trial in the district court he recovered compensation at the rate of $20 per week for 300 weeks, and $230 for hospital and medical expenses incurred by him during the first four weeks after his injury. The insurance carrier, hereinafter called "defendant," perfected this appeal. Chitwood will be hereinafter referred to as "plaintiff."

Defendant urges here four grounds of error. In substance these are: Plaintiff was not acting in furtherance of his employer's business at the time he received his injury; second, his injury did not originate in the business of his employer; third, in the event 1 and 2 be deemed without merit, the compensation period should not exceed 200 weeks because the injury was a specific injury to the leg; four, that the evidence does not sustain the judgment for the value of medical aid.

Points 1 and 2 are very properly briefed together. Their disposition renders necessary a consideration of the evidence. The

employer is engaged in the wholesale business of selling liquor, beer and fountain supplies. Its principal place of business is in El Paso, Texas. Plaintiff was, at the relevant times herein, a salesman of wine, beer and liquor, and fountain supplies. James A. Wallace was plaintiff's superior, and was sales manager. The business of employer is rather extensive. Plaintiff on the 26th day of November, 1944, with general sales manager Wallace had been calling upon the trade in El Paso. About six o'clock P.M. they returned to the place of business of their employer, where the car of plaintiff was parked. Plaintiff accompanied Wallace to Jimmie's Liquor Store, about a block from the place of business of their employer. Wallace's purpose in going there was to obtain cigarettes. While there he called up his home and was informed by his wife that the Log Cabin Bar had called up and stated it had not received its quota of beer, and that Mrs. Zimmerman, Secretary and Treasurer of the Empire, had also called and stated that the Log Cabin wanted a keg of beer. The storehouse of the Empire was closed, but Wallace stated that he could borrow a keg of beer from the Shamrock. He asked plaintiff to accompany him to obtain the beer from the Shamrock and to help him deliver same to the Log Cabin, to which plaintiff assented. A keg of beer weighs something over two hundred pounds. Mrs. McDonald, an employee of Jimmie's Liquor Store, overheard the conversation and asked Mr. Wallace if he would not take her to her home on Grant Avenue. Mr. Wallace promised to do so.

Plaintiff, Wallace and Mrs. McDonald then proceeded to the Shamrock Bar in a car driven by and under the control of Wallace, obtained the keg of beer and delivered it to the Log Cabin Bar, stopping there for a short time. This car was the property of the employer and used by Wallace in its business. The three then proceeded west on Texas Street, the most direct route to the place of business of the Empire Products Company, but it was Wallace's intention to turn off Texas Street to take Mrs. McDonald to her home on Grant Avenue, and then proceed to the place of business of the Empire Products Company, where plaintiff might obtain his car. Before reaching the place to turn off, while crossing an intersection of the railroad with Texas Street, the car was struck by a railroad engine and plaintiff received serious and permanent injuries, for which he recovered compensation.

Jimmie's Liquor Store was a customer of Empire. Mrs. McDonald was in charge of same at the time plaintiff and Wallace went there and she was well acquainted with plaintiff and with Wallace.

Paragraph 4 of Article 8309, Vernon's Ann.Civ.St., preceded by several exceptive provisions, is in part as follows:

"An injury * * * shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employé while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere."

■ There can be no question but that Wallace, in borrowing the keg of beer and making delivery thereof to a customer of his employer, was acting in the course of and in furtherance of his employer's business. Wallace was plaintiff's superior, and in accompanying him for the purpose of obtaining and delivering the keg of beer he was acting in the furtherance of his employer's business, and in the course thereof. His return to his employer's place of business was incidental to the business in which he was engaged. If the above facts are not beyond issue under the evidence, they were at least issues on the trial.

■ It is then a question whether or not the injury occurred during a deviation from the employer's business. Taking Mrs. McDonald to her home was not incidental to the obtaining and delivering the keg of beer. It is to be borne in mind, however, that plaintiff's superior was in charge of the car. Of course plaintiff, upon delivery of the beer, might have returned to his employer's place of business by some other means, but his superior had promised to take him there. It is thought that even if Wallace intended to take Mrs. McDonald to her home before returning to the plant, de-

viated from his employer's work, plaintiff was not bound to abandon the car as a means of his return to the plant. It was not a deviation by plaintiff.

Hartford Accident & Indemnity Co. v. Durham, Tex.Civ.App., 222 S.W. 275, Writ Dismissed. In a sense a deviation never took place—it might have been intended.

■ We are by no means sure that in taking Mrs. McDonald home Wallace was not acting in the furtherance of his employer's business. He was sales manager. One of the factors in successful salesmanship is cultivation of good will of the customers. It is inferable from the evidence that Mrs. McDonald was an old customer of his employer. There is no essential difference between cultivating good will by taking a customer home than in otherwise entertaining her. It is a matter of common knowledge that firms engaged in the sale of goods go to great pains to please and entertain old customers and prospective customers.

"An injury has to do with and rises out of the work or business of the employer * * * when it results from a risk or hazard which is necessarily or ordinarily reasonably inherent in, or incidental to, the conduct of such work or business * * *". Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1402.

That Wallace was acting in furtherance of his employer's business and the injury arose from perils encountered in performing this work we think is sustained by the authorities cited below: Commercial Casualty Ins. Co. v. Strawn, Tex.Civ.App., 44 S.W.2d 805, Writ Refused; Southern Surety Co. v. Shook, Tex.Civ.App., 44 S.W.2d 425, Writ Refused; Constitution Indemnity Co. v. Shytles, 5 Cir., 47 F.2d 441; King v. Glens Falls Indemnity Co., 5 Cir., 124 F.2d 942; Solar-Sturgis Mfg. Co. v. Industrial Comm., 315 Ill. 352, 146 N.E. 572.

In our opinion the evidence is sufficient to at least raise the issue that Wallace in acceding to the request of Mrs. McDonald to drive her home was acting in furtherance of the business of his employer. If Wallace was acting in the furtherance of his employer's business, the hazards of the street arose out of the employment. By virtue of his employment the plaintiff was exposed to traffic hazards.

■ Defendant has abandoned its claim that the amount of weekly compensation was too large. This contention is that the maximum it was liable for in any event was 200 weeks instead of 300 weeks allowed by the judgment. This contention is based on the theory that the effect of the injury was partial and permanent incapacity of one leg. Plaintiff's pleading covered a general injury as well as specific injury to the leg. From the fact that compensation was for 300 weeks and the court never found a specific injury, it is to be inferred that the trial court found a general injury rather than a specific partial injury to the leg. The injury to plaintiff was to the joint. There was a rather severe injury to the hip joint. If plaintiff suffered loss of use of his leg in any degree it is not the result of direct injury to his leg but the result of the injury to his hip joint. There is no doubt that where a specific injury results in harm and injury to other portions of the body that the disability may be classed as general, and recovery had therefor as such. Consolidated Underwriters v. Langley, 141 Tex. 78, 170 S.W.2d 463, and authorities there cited. The above cited case is also authority for the proposition that even though the loss or injury of a particular member listed in said paragraph 12 of Article 8306 results in total permanent incapacity to the workman, unless other parts of the body are affected the injury is specific and compensation is governed by Paragraph 12.

■ As a result of this injury plaintiff can not unassisted put on a shoe or sock on his right foot. He can not bend over normally from the hips; can not lift weights that he did before. This trial was before the court and without a jury. Findings of fact and conclusions of law were not demanded. If under the evidence the judgment is sustained it is our duty to affirm the holding of the trial court. In our opinion the evidence is sufficient to raise the issue of a general injury, hence the assignment is overruled.

The court entered judgment in favor of plaintiff in the sum of $200 for medical expenses. Defendant denied liability herein and refused to provide medical aid. The court found that $200.30 was furnished during the first four weeks elapsing from the date of the accident, and allowed same, but refused to allow any other medical expenses because plaintiff failed to comply with Section 7, Art. 8306, in respect to having his attending physician certify to the Board the necessity of further medical treatment. It is conceded there is evidence to sustain charges in the sum of $8.95. As to all other items claimed by plaintiff the evidence is insufficient to show either their reasonableness or whether same were incurred prior to the lapse of four weeks period. If plaintiff within ten days shall file herein a remittitur in the sum of $191.-45, the case will be affirmed, otherwise same will be reversed and remanded for a new trial.

It is thought that even though we might have the discretion to reverse and remand the case as to these items of medical expense, that we should not do so.

McGILL, Justice (concurring).

I do not concur in the view that the evidence is sufficient to raise an issue that Wallace in acceding to the request of Mrs. McDonald to drive her home was acting in furtherance of the business of the Empire. In my opinion, the fact that the evidence was sufficient to show that Mrs. McDonald was an old customer of Empire and that it was part of Chitwood's duties to entertain customers in order to cultivate good will and secure or retain business for the company would not support such finding. The only evidence as to the type of "entertainment" embraced within the duties of either Wallace or Chitwood is found in Chitwood's testimony: "You have to take them out to dinner and to clubs." The record is silent as to any duty, express or implied, of Wallace or Chitwood to escort customers of the Empire to their homes.

In Commercial Casualty Co. v. Strawn, cited in the majority opinion, the evidence showed that the injured employee was specifically requested by the general manager to take him and some customers duck hunting; that it was customary for the general manager to entertain customers at company expense, and that he had authority to do so. This evidence was ample to support a finding that the injured employee was engaged in company business while on the duck hunting trip. In my opinion we are not authorized to take judicial notice as to the scope of the duties of either Wallace or Chitwood merely because one was a city sales manager and the other a salesman of Empire, engaged in selling its products consisting of wine, liquors and fountain supplies.

The evidence is sufficient to show that Wallace, as city sales manager, was Chitwood's superior, and that Chitwood was subject to his orders. Under the circumstances, Wallace's request that Chitwood help him to install the keg of beer at the Log Cabin Bar amounted to a command. It was understood that Wallace would return Chitwood to the Empire plant. This mission subjected Chitwood to the hazards of the city streets in going to and returning from the Log Cabin Bar. At the time of the accident Wallace was engaged in the act of taking Mrs. McDonald home. That he had not yet reached Dallas Street or Cotton Avenue, where he would have turned off from the direct route of return to the Empire plant, is unimportant. Chitwood was a passive occupant of the car; he had no control over it and made no protest, although he knew its immediate destination. Under such circumstances Chitwood's presence in the car at the time of the accident was incidental to his task of helping to install the keg of beer at the Log Cabin Bar, and he was therefore engaged in the furtherance of Empire's business at such time. A different question would be presented had Wallace been the injured party. The situation is very similar to that disclosed in Soden v. Public Service Transp. Co., 134 A. 560, 4 N.J. Misc. 817, affirmed 103 N.J.L. 713, 137 A. 437 (Court of Errors and Appeals, N.J.)

For the reasons indicated I concur in affirmance of the judgment.